Duane W. LARSON, pro se, Pamela
A. Larson, pro se, Plaintiffs,

v.

UNITED STATES, Defendant.

Nos. 08–737T, 09–470T.

United States Court of Federal Claims.

Sept. 11, 2009.

Duane W. Larson and Pamela A. Larson, Murrieta, CA, pro se plaintiffs.

Fredrick C. Crombie, Trial Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for the defendant. With him were Steven I. Frahm, Chief, Court of Federal Claims Section, and John A. DiCicco, Acting Assistant Attorney General.

1. Plaintiffs also make allegations that IRS employees used the power of "distraint" and "extortion," and forced "involuntary servitude" by "harassment," making "threats," and engaging in "malicious acts" against the plaintiffs, although plaintiffs do not supply any evidence to buttress these claims. Moreover, because this court neither has jurisdiction to adjudicate criminal justice claims, *Joshua v. United States*, 17 F.3d 378, 379 (Fed.Cir.1994), nor actions based on tortious acts, *Keene Corp. v. United States*, 508

## OPINION

HORN, Judge.

## FINDINGS OF FACT

The two consolidated cases, case nos. 08–737T and 09–470T, involve disputed claims of federal income tax refunds allegedly owed to plaintiffs Duane W. Larson and Pamela A. Larson for tax years 1978, 1979, 1980, 1986, 1988, 1989 and 1991. Defendant, the United States, seeks to dismiss the plaintiffs' claims in their entirety, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), for lack of subject matter jurisdiction, or, in the alternative, pursuant to RCFC 12(b)(6), for failure to state a claim upon which relief can be granted. These are the eighth and ninth lawsuits filed by the plaintiffs regarding their tax liability in federal court, including appeals.

▮ Plaintiffs initiated this recent round of litigation on October 16, 2008, when case no. 08–737T was filed. Then on July 21, 2009, plaintiffs filed a second lawsuit in this court, case no. 09–470T. The plaintiffs argue ten separate claims for relief:[1]

### Tax years 1978, 1979 and 1980

- *Count I:* Seeks a refund of $964,399.07, plus interest, allegedly collected throughout August and September 1990, on the theory that the alleged collections violated 26 U.S.C. §§ 6213(a) and 6215(a) (1976).

- *Count II:* Requests an order for an additional, independent, forensic audit of tax years 1978, 1979 and 1980, and to remove allegedly illegally assessed failure to pay (FTP) penalties, which, according to the plaintiffs, were not authorized by the United States Tax Court ruling.[2]

U.S. 200, 214, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993), *Rick's Mushroom Service, Inc. v. United States*, 521 F.3d 1338, 1343 (Fed.Cir.2008), this opinion does not address such allegations raised by the plaintiffs.

2. *Larson v. Comm'r*, 67 T.C.M. (CCH) 3154 (1994), *aff'd*, 60 F.3d 830, 1995 WL 410986 (8th Cir.1995) (table).

- *Count III:* Reasserts the request for a "forensic" audit of 1978, 1979 and 1980 to determine whether plaintiffs satisfied their tax liabilities in August and September 1990.
- *Count IV:* Seeks refunds of amounts paid, plus interest, pursuant to the November 23, 1994 Notice of Deficiency, following plaintiffs' alleged previous full payment of their tax obligation.
- *Count V:* Seeks a refund of $189,758.00, plus interest, which plaintiffs claim was paid with respect to tax years 1985–1989, 1991, and 1992, but was applied to tax year 1979.
- *Count VIII:* Seeks a refund of interest charged on fraud penalties with respect to tax years 1978, 1979 and 1980.
- *Count IX:* Seeks a refund or transfer to the Social Security Agency of social security taxes paid for tax years 1978, 1979 and 1980.
- *Count X:* Seeks a refund of $17,349.69, together with statutory interest, for 256 gold coins allegedly illegally levied upon and sold by the Internal Revenue Service (IRS) in 1986, with the proceeds applied to plaintiffs' tax year 1978 liabilities.

### Tax year 1986

- *Count VII:* Seeks a refund of $16,825.45 in alleged overpayments allegedly lost or misplaced by the IRS.

### Tax years 1988, 1989 and 1991

- *Count VI:* Seeks a refund in the amount of $22,439.24, plus interest, as a result of the IRS allegedly transferring amounts from tax years 1988, 1989 and 1991 to satisfy plaintiffs' liabilities for tax years 1978–1980.

3. Section 7201 states:

 Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000 ..., or imprisoned not more than 5 years, or both, together with the costs of prosecution.

 26 U.S.C. § 7201 (1976).

4. Defendant calculated the criminal tax understatements for the years 1978, 1979, and 1980 as

In essence, the plaintiffs present a nucleus of three claims: (1) allegedly "excess" amounts "illegally collected" with respect to tax years 1978–1980; (2) $16,825.45 of allegedly "misplaced money" by the IRS for tax year 1986; and (3) assessment of allegedly "special damages," including interest and penalties, that accrued on unpaid liabilities for tax years 1988, 1989 and 1991. Plaintiffs' repetitive, interwoven, convoluted claims and erratic history of filing their tax returns, making payments on their tax liabilities and requesting refunds, require the court to set forth the procedural history in sufficient detail in order to separate and resolve their claims. Because the record and the complaint provided to the court are, at best, not well organized, the court has done its best to identify the salient facts.

### Tax years 1978, 1979 and 1980

In 1985, plaintiff Duane Larson faced charges of criminal tax evasion for the tax years 1978, 1979 and 1980 under 26 U.S.C § 7201.[3] In response to these charges, Mr. Larson agreed to an August 19, 1985 plea bargain under which he pled guilty to evading the payment of his 1979 federal income taxes. As part of the plea agreement, Mr. Larson conceded the accuracy of the criminal tax computations for 1978, 1979 and 1980, which reflected understatements of income for each of these years.[4]

After the IRS established the plaintiffs' criminal tax liability for the years 1978, 1979 and 1980, the IRS, on two separate occasions, assessed applicable taxes, penalties, and interest. Believing the collection of the plaintiffs' accounts to be in jeopardy, the IRS applied jeopardy assessments for the three tax years in question.[5] Subsequently, on

$34,487.23, $158,839.97, and $125,168.18, respectively.

5. Defendant's calculation of plaintiffs' federal income tax jeopardy assessments are as follows:

| Year | Tax | Penalty | Interest |
|------|------|---------|----------|
| 1978 | $ 51,361.31 | $25,680.66 | $53,001.81 |
| 1979 | $ 39,812.23 | $19,906.12 | $37,108.40 |
| 1980 | $120,430.52 | $60,215.26 | $92,288.60 |

Jeopardy assessments are defined in 26 U.S.C. § 6861(a):

September 16, 1985, the IRS executed an updated calculation of plaintiffs' deficient accounts based on the civil tax fraud charges, and issued a Notice of Deficiency.[6] In response to the IRS' assessment of civil tax fraud penalties, Mr. Larson filed an action contesting the actions by the IRS in the United States Tax Court on December 12, 1985. In the Tax Court action, Mr. Larson challenged the IRS' assessment of civil tax fraud penalties on a number of grounds:

(a) The IRS' notice of deficiency was arbitrary and capricious.

(b) The IRS' use of the "net worth" method to reconstruct plaintiff's income was not appropriate.

(c) The Internal Revenue Code (I.R.C.) § 6653(b) civil tax fraud penalties were incorrectly assessed.

(d) Plaintiffs should be able to employ "income averaging" in calculating deficiencies for tax years 1978, 1979 and 1980.

(e) The deficiency assessment was outside of the statute of limitations for tax years 1978, 1979 and 1980.[7]

> If the Secretary believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall … immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary for the payment thereof.
>
> 26 U.S.C. § 6861(a) (1976); *see also Comm'r v. Hendrickson*, 873 F.2d 1018, 1020 (7th Cir.1989).

6. The IRS' calculation of plaintiffs' federal income tax deficiency to include penalties for civil tax liability are as follows:

| Year | Deficiency | Additions (per 26 U.S.C. § 6653(b)) |
| --- | --- | --- |
| 1978 | $ 36,100.93 | $18,050.47 |
| 1979 | $160,694.87 | $80,347.44 |
| 1980 | $127,094.08 | $63,547.04 |

The court notes that the amounts calculated above differ to a degree from the criminal tax calculations, as the "net worth" method was used to establish plaintiffs' income for the deficiencies. Additionally, these deficiencies were not assessed until after the United States Tax Court issued its June 29, 1994 opinion, *Larson v. Comm'r*, 67 T.C.M (CCH) 3154, affirming the IRS' calculation of the proposed deficiencies. However, at the time of the Tax Court ruling, the

*Larson v. Comm'r*, 67 T.C.M (CCH) 3154, 1994 WL 285892, at *4–13 (U.S.Tax Ct. June 29, 1994).

Before resolution of the Tax Court litigation, the plaintiffs initiated payments toward the balance of their outstanding, contested, federal tax deficiency. The plaintiffs eventually paid the entire outstanding federal tax deficiency balances for tax years 1978 and 1980.[8] *Id.* The Tax Court's opinion, issued on June 29, 1994, affirmed the IRS Commissioner's calculation of the plaintiffs' tax deficiencies for the tax years 1978, 1979 and 1980, found that the plaintiffs' actions were indicative of fraud for the stated tax years, and determined that the 26 U.S.C. § 6653(b) (1976) civil tax penalties were justifiably applied to the stated tax years. *Id.* Subsequent to the Tax Court's judgment, the supplementary tax, penalties, and interest previously assessed by the IRS on September 16, 1985, upheld by the Tax Court, but absent from the August 1985 jeopardy assessment, were assessed to the plaintiffs' 1978–1980 accounts.[9]

The United States Court of Appeals for the Eighth Circuit affirmed the Tax Court's ruling. *Larson v. Comm'r*, 60 F.3d 830, 1995

plaintiffs already had paid the proposed deficiency assessments for tax years 1978 and 1980. Thus, only the deficiency for tax year 1979 remained outstanding at the time of the Tax Court's affirmation of the IRS' deficiency determinations against the plaintiffs.

7. Before the resolution of the Tax Court litigation, the plaintiffs filed two informal refund claims for tax years 1978, 1979, and 1980 on November 5, 1991 and January 29, 1992, relying upon identical legal grounds as proposed in the Tax Court action.

8. The plaintiffs paid their federal tax deficiencies in full for the tax years of 1978 and 1980 on September 2, 1991 and August 23, 1990, respectively.

9. For tax year 1979, the IRS assessed an additional $120,883.00 in taxes, $60,441.00 in penalties, and $439,051.00 in interest. The IRS assessed an additional $6,664.00 in taxes, $3,332.00 in penalties, and $13,132.00 in interest for tax year 1980. However, for tax year 1978, $15,260.00 in taxes and $7,630.00 in penalties were abated. At the time of this assessment, plaintiffs already had satisfied their 1978 and 1980 liabilities, and only the 1979 liabilities remained open.

WL 410986 (8th Cir.1995) (table). Following this decision, the plaintiffs reconsidered their approach regarding the disputed refund claims for 1978, 1979 and 1980, and sought to appeal directly to the IRS. Specifically, on December 3, 1994, the plaintiffs addressed a letter to the IRS in which they claimed that the proposed assessment of interest applied to unpaid balances for tax years 1978, 1979 and 1980 violated the terms of plaintiff Duane Larson's 1985, criminal plea bargain. After apparently receiving no response from the IRS, plaintiffs also initiated contact with the IRS' Problem Resolution Office, located in Laguna Niguel, California. Shortly thereafter, on July 10, 1996, plaintiffs sent a second letter to the IRS echoing the claims of the December 1994 letter.

On October 3, 1997, before paying the outstanding balance on the 1979 tax liability, Mr. Larson once again sought a judicial remedy, this time in the United States District Court for the Central District of California,[10] by filing a claim for a refund of the accrued interest that had been assessed on their outstanding 1978, 1979 and 1980 federal tax liabilities prior to acceptance of the August 19, 1985 plea bargain. However, the California District Court dismissed plaintiff's claim based on lack of subject matter jurisdiction on March 31, 1998.

Following the March 1998 District Court ruling, plaintiffs again applied for remedial relief for their claim that interest had been improperly assessed on tax years 1978, 1979 and 1980 before enforcement of plaintiff Duane Larson's plea bargain in August 1985.[11] In this particular instance, plaintiffs again appealed directly to the IRS, submitting a claim for refunds pertaining to the allegedly improper interest that was assessed on the plaintiffs' accounts. After concluding no response had been received from the IRS, yet another action in the Central District of California was initiated, on October 21, 1998,[12] repeating arguments offered in the previous March 31, 1998 District Court action. In moving to dismiss plaintiff's reincarnation of the March 1998 claims, the United States again argued that the court lacked sufficient subject matter jurisdiction to hear the case. The United States also argued that plaintiffs had not filed the refund claims for tax years 1978 and 1980 within the two-year statute of limitations required by 26 U.S.C. § 6511(a).[13] As before, the District Court found that the plea agreement "was not breached by the Service's assessment of pre-August 19, 1985 interest," and dismissed the case, with prejudice. On appeal, the Ninth Circuit Court of Appeals affirmed the District Court.[14]

Thereafter, the plaintiffs, once again, sought relief directly from the IRS, this time on the theory that the plaintiffs had been illegally subjected to double taxation. On August 9, 2002, plaintiffs filed an amended return (IRS Form 1040X) for tax year 1979 to request a refund due to their alleged full payment of all tax liabilities by 1990, and the subsequent receipt of an allegedly erroneous Notice of Tax Due on November 23, 1994, asserting that the plaintiffs owed an additional $613,499.84 for tax years 1978, 1979 and 1980. Plaintiffs now allege that the Notice of Tax Due constituted "some form of back interest on a debt that had long been paid in full," and that the plaintiffs had attempted to obtain a refund through the court system in their 1998 District Court action.[15] Further,

10. *Larson v. United States*, No. 97–782 (C.D. Cal. filed Oct. 3, 1997).

11. Specifically, Mr. Larson argued that, based on the plea agreement signed on August 19, 1985, the United States had forfeited its right to collect interest on the plaintiffs' outstanding federal income tax balances before August 19, 1985, which, after review of the plea agreement in the record, clearly is not the case.

12. *Larson v. United States*, No. 98–902 (C.D. Cal. filed Oct. 21, 1998).

13. Section 6511(a) states:

Claim for credit or refund of an overpayment of any tax imposed by this title ... shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. 26 U.S.C. § 6511(a)(1976).

14. *See Larson v. United States*, 2 Fed.Appx. 847 (9th Cir.2001).

15. *See Larson v. United States*, No. 98–902 (C.D.Cal.1998).

plaintiffs now also contend that the $613,499.84 was an erroneous, back debt which improperly affected the outcome of the plaintiffs' 1998 District Court litigation, as the $613,499.84 was not the real issue. According to plaintiffs, in order to correct this mistaken assertion, the 2002 Form 1040X refund request was filed "on the correct basis of DOUBLE TAXATION." (emphasis in original).

Defendant admits that there may have been some level of confusion at the IRS with regard to the handling of plaintiffs' 1040X amended return. The court notes that this is not surprising, given the constant back and forth with the IRS and the erratic filing of yearly tax returns, amendments and payments by plaintiffs. Specifically, defendant states that "[t]he IRS, mistakenly concluding that the amended return constituted a *timely* refund claim and apparently unaware of the prior litigation involving 1978–1980, agreed to review his payment history for those years." (emphasis in original).

As a result of the IRS audit, plaintiffs initiated two new, nearly identical District Court actions: *Duane W. and Pamela A. Larson v. United States,* No. 04–939 (C.D. Cal. filed July 9, 2004) and *Duane W. and Pamela A. Larson v. United States,* No. 04–1176 (C.D.Cal. filed Oct. 7, 2004). The basis for each of these actions involved the plaintiffs' attempt at reclamation of either the lesser of $1,000,000.00 or economic damages under 26 U.S.C §§ 7433 and 7426(h) (1976).[16] Plaintiffs alleged that these damages stem from the IRS' supposed, overzealous collection of tax liabilities from the plaintiffs for the tax years 1978, 1979 and 1980, in violation of the 1994 Tax Court order and the 1985 plea bargain.[17]

Plaintiffs further asserted that $877,016.76 they allegedly paid on September 12, 1990 to fulfill outstanding tax liabilities for the years in question, 1978, 1979 and 1980, "disappeared" from the IRS records, and plaintiffs were not given credit for that amount. Due to this alleged "disappearance," the plaintiffs asserted that an additional $636,626.90 was assessed, in excess of what plaintiffs allegedly owed for tax years 1979 and 1980. Additionally, plaintiffs claimed that during the 1998 District Court litigation, the fact of the "disappearance" of $877,016.76 was not disclosed to the court or to any parties in the case. Thus, plaintiffs argued that the alleged "disappearance" of $877,016.76 precluded effective litigation of the issues in the 1998 District Court case. Plaintiffs argued that the defendant's claim that the 2005 action was foreclosed under the doctrine of *res judicata* should be rejected.[18]

The District Court, however, granted the United States' motion for summary judgment on May 3, 2005, on the grounds of *res judicata:*

> The Larsons seek to obtain a refund of taxes that were collected pursuant to a November 23, 1994 jeopardy assessment that they contend was in excess of the Tax Court's decision in 1994. This "excess amount" is the same overpayment that Mr. Larson sought to recover in the 1998 Action. As the Court reached a decision on the merits in the 1998 Action and dismissed all of Mr. Larson's claims for overpayment arising from the same subject tax years, plaintiffs' claims in this matter are barred by the doctrine of *res judicata* irrespective of Mr. Larson's ability to devise creative new theories of recovery.

---

**16.** These two sections of the United States Code cover civil actions by taxpayers for damages stemming from negligent, reckless, or intentional disregard of Code provisions by IRS employees in connection with collection activities. However, as the defendant notes, both of these actions must be brought in United States District Court.

**17.** Plaintiffs also included the tax years of 1988, 1989, and 1991 in their complaint for remedial refunds for alleged overpayment of federal taxes. The District Court's opinion, however, included no information pertaining to these years. *Larson*

*v. United States,* No. 04–1176 (C.D.Cal.2005). Nor did the parties' briefs focus on the inclusion of these years.

**18.** In the 2005 District Court action, plaintiffs also claimed that the IRS had intentionally violated provisions of 26 U.S.C. §§ 6015(a), 6212(a), 6213(a) and 6503(a)(1) (1976), by calculating jeopardy assessments for tax years 1978, 1979 and 1980 before the 1994 Tax Court proceedings were final.

*Larson v. United States,* No. 04–1176, slip op. at 4 (C.D.Cal.2005).[19]

Plaintiffs appealed the District Court's judgment on May 20, 2005, in which they argued, *inter alia,* that the Form 1040X was not their only refund request, and that they had made refund requests from November 5, 1991 through January 12, 1998, which were attached and incorporated by reference into the April 7, 1998 refund request, and which, they argued, then became part of the Form 1040X refund request. Despite the plaintiffs' contentions on appeal, the Ninth Circuit affirmed the District Court's judgment:

> Duane Larson paid his tax liabilities in full by October 1997, but did not file the instant refund claim with the IRS until August 9, 2002. Because the Larsons did not file their administrative claim for a tax refund within two years of paying the tax, the administrative claim was untimely under 26 U.S.C. § 6511(a) and 26 C.F.R. § 301.6511(a)-(1)(a)(2). The district court therefore lacked subject matter jurisdiction over the Larson's tax refund action.

*Larson v. United States,* 175 Fed.Appx.814 (9th Cir.2006).

On the heels of the Ninth Circuit's ruling, the plaintiffs continued to actively pursue a favorable resolution of their tax refund claims during the period from April 12, 2006 to October 1, 2007, filing fifteen additional Forms 1040X with the IRS that purported to amend alleged informal claims for tax years 1978–1980. The plaintiffs continued to rely on the previously discredited grounds asserted in the 2004 actions, basing these "new" amendments on claims that the plaintiffs were "excessively double assessed" on their tax liabilities, and that the IRS calculations

**19.** Plaintiffs' second (and identical) complaint was dismissed about one year later, "since the Amended Pleading is *identical* to the Amended Pleading that plaintiffs filed in [the earlier No. 04–1176 proceeding] ... this action clearly is barred by *res judicata.*" *Larson v. United States,* 04–939, slip op. at 5 (CD.Cal.2006) (emphasis in original).

**20.** The defendant claims that:

> The [Riverside] Appeals Office apparently misinterpreted legal precedents governing the timeliness (or untimeliness) of purported amendments to informal claims for refund.... The Appeals office was also apparently un-

of interest for 1978–1980 were erroneous. The IRS denied plaintiffs' claims in full, resulting in the plaintiffs' filing of an appeal at the IRS. However, in what the defendant classifies as a mistaken acceptance of these double assessment claims[20] by the Riverside (California) Appeals Office, the plaintiffs received credits and refunds in connection with their 1978–1980 accounts.[21]

### Tax year 1986

The plaintiffs satisfied their outstanding liabilities for tax year 1986 by December 9, 1987. However, plaintiffs mailed a $6,000.00 check to the IRS on May 23, 1990 for application to "any tax liabilities, as needed, for the years 1987–1989." Because *no returns* for tax years 1985–1989 had been filed on behalf of the plaintiffs at that time, the IRS applied the $6,000.00 check as a credit to the plaintiffs' 1986 account. Subsequently, on August 13, 1990, plaintiffs mailed another payment, totaling $10,825.45, with the instructions that its entirety was to be applied to their 1986 account. But, due to the fact that the plaintiffs had already satisfied their 1986 liabilities, the two payments were combined into a $16,825.45 credit for the 1986 tax year.

Although plaintiffs sent the IRS multiple requests for refunds of the 1986 tax year credit, only three of the requests fell within the 26 U.S.C. § 6511(a) statute of limitations. However, none of the three letters contained specific language asking the IRS to refund the exact $16,825.45 credit from tax year 1986. It was not until December 4, 2006 that the plaintiffs filed a Form 1040X, specifically stating that the 1986 tax year credit of $16,825.45 that plaintiffs claimed had been

> aware of the fact or the effect of the prior litigation involving those years. This is not surprising, given that, as reflected in the parties' exhibits, plaintiffs filed their various returns, claims, and correspondence over many years with different IRS offices....

**21.** The changes in plaintiffs' accounts for 1978–1980 were crediting $22,968.43 in interest to the 1978 account; reduction of $8,801.58 in interest charged for late payment on the 1978 account; issuance of, according to defendant, erroneous refund in the amount of $31,770.01 with respect to the 1978 account; and confirmation of zero balances for tax years 1978–1980.

"over collect[ed]." The IRS disallowed the December 4, 2006 claims, but has since commenced an investigation into the allegedly missing $16,825.45. Following the plaintiffs' filing of the complaint in this court, however, the IRS did not decide the appeal on the issue.

## Tax years 1988, 1990 and 1991

From February to August 1990, plaintiffs made a number of payments toward deficiencies for tax years 1989 and 1990. Additionally, in April 1991, the plaintiffs made payments to be applied to tax year 1991.[22] However, the plaintiffs had not filed taxes for those years, and in accordance with 26 U.S.C. § 6402(a),[23] the IRS applied the account credits from tax years 1989, 1990, and 1991 to plaintiffs' remaining outstanding liability for tax year 1979. Plaintiffs later mailed a May 18, 1992 letter to the IRS acknowledging that they, the plaintiffs, had not yet filed returns for tax years 1986 through 1992, and requested that the credits previously mailed to the IRS by plaintiffs be refunded to them, rather than applied to outstanding tax year liabilities. Eventually, on September 12, 1994, plaintiffs filed their tax returns for tax years 1988, 1989 and 1991, claiming that they owed nothing in income taxes for those years. The IRS disagreed that no taxes were owed and assessed taxes, penalties, and interest to the 1988, 1989 and 1991 tax years. The IRS had applied what plaintiffs tried to prepay for those years to tax year 1979, on which plaintiffs still owed back taxes. The plaintiffs paid their assessed tax liabilities in full by October 21, 1997, permitting the IRS to issue a number of refunds to the plaintiffs over the course of 1999.[24] Finally, on February 15, 2007, the plaintiffs once again filed two Forms 1040X for tax years 1988 and 1989, claiming "increase[d] capital loss carryovers to tax year 2005, by claiming additional capital loss credits for 1988 and 1989."

## DISCUSSION

### Jurisdiction

When a plaintiff brings an action before a federal court, he or she first must establish proper jurisdiction in the court before the merits of any action may be evaluated. The plaintiffs have the burden of establishing such jurisdiction by a preponderance of the evidence. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2002); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act, 28 U.S.C. § 1491(a)(1) (2006), requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on express or implied contracts with the United States, (2) seeking a refund from a prior payment made

---

**22.** Plaintiffs' attempted designated payments totaled $36,800.00 toward tax year 1988, $60,000.00 toward tax year 1989, and $46,973.00 toward tax year 1991.

**23.** The text of 26 U.S.C. § 6402(a) states:
In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against

any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c) and (d), refund any balance to such person. 26 U.S.C. § 6402(a) (1988).

**24.** On July 19, 1999, the IRS issued a $5,733.08 refund for tax year 1991. On December 6, 1999, a $698.84 refund was issued.

to the government or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114, *reh'g denied,* 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed.Cir.1996).

■■■■ "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States" *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see also Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 605, 372 F.2d at 1007. To prove that a statute or regulation is money mandating, plaintiff must demonstrate that the source of substantive law "relied upon can fairly be interpreted as mandating compensation by the federal government for the damage sustained." *United States v. Mitchell,* 463 U.S. at 216–17, 103 S.Ct. 2961 (quoting *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948); *see also In re United States,* 463 F.3d 1328, 1333 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2006), *cert. denied,* 552 U.S. 940, 128 S.Ct. 50, 169 L.Ed.2d 243 (2007). "Additionally, the specific authority granting money relief must be distinct from [the] Tucker Act itself." *Cottrell v. United States,* 42 Fed.Cl. 144, 152 (1998). "If the court's conclusion is that the source as alleged and pleaded is not money— mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act." *Fisher v. United States,* 402 F.3d 1167, 1173 (Fed.Cir.2005); *see also Doe v. United States,* 74 Fed.Cl. 794, 796 (2006). The United States Court of Federal Claims has the "'undisputed' ... authority to adjudicate tax refund claims." *Buser v. United States,* 85 Fed.Cl. 248, 256 (2009) (quoting *CNG Transmission Mgmt. VEBA v. United States,* 84

Fed.Cl. 327, 328 (2008)); *see also United States v. Clintwood Elkhorn Mining Co.,* 553 U.S. 1, 128 S.Ct. 1511, 1514, 170 L.Ed.2d 392 (2008) ("A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government ... in the United States Court of Federal Claims.").

**Standard of review**

■■■■ Defendant moves to dismiss the current action based on a lack of subject matter jurisdiction under RCFC 12(b)(1), as the plaintiffs' claims are effectively barred by the applicable statute of limitations and *res judicata,* or, in the alternative, for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). "Subject matter jurisdiction may be challenged at any time by the parties, or by the court sua sponte." *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2004), *cert. denied,* 545 U.S. 1127, 125 S.Ct. 2935, 162 L.Ed.2d 865 (2005); *see also Rick's Mushroom Serv., Inc. v. United States,* 521 F.3d at 1346; *Fanning, Phillips, Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (Fed.Cir.1993)); *United States v. Newport News Shipbuilding and Dry Dock Co.,* 933 F.2d 996, 998 n. 1 (Fed.Cir.1991); *North Star Alaska Hous. Corp. v. United States,* 76 Fed.Cl. 158, 185 (2007), *appeal dismissed,* 226 Fed.Appx. 1004 (2007). "In fact, a court has a duty to inquire into its jurisdiction to hear and decide a case." *Special Devices, Inc. v. OEA, Inc.,* 269 F.3d 1340, 1342 (Fed.Cir.2001) (citing *Johannsen v. Pay Less Drug Stores N.W., Inc.,* 918 F.2d 160, 161 (Fed.Cir.1990)); *see also View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 115 F.3d 962, 963 (Fed.Cir.1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not.").

■■■■ Pursuant to Rule 8(a) of the United States Court of Federal Claims (RCFC) and Rule 8(a) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction...." RCFC 8(a)(1); Fed.R.Civ.P.

8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)), *reh'g denied* (Fed.Cir.1997); *see also Edelmann v. United States,* 76 Fed.Cl. 376, 379 (2007). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir. 1998); *see also McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1363 n. 9 (Fed.Cir.2007) (quoting 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1286 (3d ed.2004)); *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981) ("[C]onclusory allegations ′unsupported by any factual assertions will not withstand a motion to dismiss."), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

■■■ When deciding a case based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United Pac. Ins. Co. v. United States,* 464 F.3d 1325, 1327–28 (Fed.Cir.2006); *Boise Cascade Corp. v. United States,* 296 F.3d 1339, 1343 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2002), *cert. denied,* 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Pixton v. B & B Plastics, Inc.,* 291 F.3d 1324, 1326 (Fed.Cir.2002); *Commonwealth Edison Co. v. United States,* 271 F.3d 1327, 1338 (Fed.Cir.2001) (quoting *New Valley Corp. v. United States,* 119 F.3d 1576, 1580 (Fed.Cir. 1997)), *cert. denied,* 535 U.S. 1096, 122 S.Ct. 2293, 152 L.Ed.2d 1051 (2002); *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir. 2000).

■■■ In examining what must be plead in order to state a claim upon which relief can be granted, under both Rule 8(a)(2) of the Rules of the United States Court of Federal Claims and Rule (8)(a)(2) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2); Fed.R.Civ.P. 8(a)(2). *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The United States Supreme Court, in the *Bell Atlantic Corporation* case, stated that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the * * * "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, *see* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance … dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (footnote and other citations omitted; brackets and omissions in original); *see also Cambridge v. United States,* 558 F.3d 1331, 1335 (Fed.Cir.2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 570, 127 S.Ct. 1955)); *Cary v. United States,* 552 F.3d 1373, 1376 (Fed.Cir.2009) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon

which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 570, 127 S.Ct. 1955)), *reh'g denied* (Fed.Cir.), *cert. denied,* —— U.S. ——, 129 S.Ct. 2878, 174 L.Ed.2d 580 (2009).

When deciding on a motion to dismiss based on failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Cambridge v. United States,* 558 F.3d at 1335 (citing *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)); *Cary v. United States,* 552 F.3d at 1376 (citing *Gould Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991)); *Anaheim Gardens v. United States,* 444 F.3d 1309, 1315 (Fed.Cir.), *reh'g denied* (Fed Cir. 2006); *Boyle v. United States,* 200 F.3d at 1372; *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998); *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995); *Highland Falls–Fort Montgomery Cent. Sch. Dist. v. United States,* 48 F.3d 1166, 1169–70 (Fed. Cir.) (citing *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991)), *cert. denied,* 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989); *Ho v. U.S.,* 49 Fed.Cl. 96, 100 (2001), *aff'd,* 30 Fed.Appx. 964 (Fed.Cir.2002); *Alaska v. United States,* 32 Fed.Cl. 689, 695 (1995), *appeal dismissed,* 86 F.3d 1178, 1996 WL 285759 (Fed.Cir.1996) (table). If a defendant or the court challenges jurisdiction or plaintiffs' claim for relief, however, the plaintiffs cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. at 189, 56 S.Ct. 780; *see also Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988); *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. 399, 404–05 (1994). "A motion to dismiss under Rule [12(b)(6)] for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy." *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998).

A complaint also can be dismissed on a Rule 12(b)(6) motion "when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 at 708 (3d ed.2008). To qualify, the defense "has to be clearly indicated and must appear on the face of the pleading to be used as the basis for the motion." *Id.; see also Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993) (citing *Wright & Miller,* § 1357 at 348–49 (2d ed.1990)); *McCalden v. Cal. Library Ass'n,* 955 F.2d 1214, 1219 (9th Cir.1990) (holding that, although Rule 12(b)(6) motions are not generally intended to address the merits of affirmative defenses, in the limited circumstances when the complaint gives rise to one, the defense may be raised under Rule 12(b)(6), as long as it appears clearly on the face of the complaint), *cert. denied,* 504 U.S. 957, 112 S.Ct. 2306, 119 L.Ed.2d 227 (1992).

Affirmative defenses that have been considered under a Rule 12(b)(6) motion to dismiss, include, among others, "various types of estoppel" and "the barring effect of res judicata and related preclusion principles." 5B Wright & Miller, *Federal Practice and Procedure* § 1357 at 722, 728 (3d ed.2008); *see also Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 n. 3, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (noting that the dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits); *Day v. Moscow,* 955 F.2d 807, 811 (2d Cir.) (holding that the affirmative defense of *res judicata* may be upheld on a motion to dismiss under Rule 12(b)(6) "when all relevant facts are shown by the court's own records, of which the court takes notice"), *cert. denied,* 506 U.S. 821, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992). Moreover, "a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact." *Andrews v. Daw,* 201 F.3d 521, 524 n. 1 (4th Cir.2000); *see, e.g., United States v. Ford Motor Co.,* 497 F.3d 1331, 1337–38 (Fed.Cir.) (Ford Motor Company filed a Rule 12(b)(6) motion to dismiss, asserting the doctrine of issue preclusion, which the Federal Circuit declined to em-

brace after comparing what was at issue in the prior litigation to the present litigation), *reh'g and reh'g en banc denied* (Fed.Cir. 2007). In order to determine whether the plaintiffs have met their required burdens, "the court may look beyond the pleadings and 'inquire into jurisdictional facts' in order to determine whether jurisdiction exists." *Lechliter v. United States*, 70 Fed.Cl. 536, 543 (quoting *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991)), *recons. granted in part on other grounds*, 72 Fed.Cl. 17 (2006).

■ Although at least one of the plaintiffs (Duane W. Larson) claims to be the holder of a Juris Doctorate degree,[25] the plaintiffs filed their action in this court *pro se*. Despite Mr. Larson's legal training, the complaint is repetitive, convoluted, and confusing, as are the disorganized exhibits. In general, when determining whether a complaint filed by a *pro se* plaintiff is sufficient to invoke review by a court, *pro se* plaintiffs are entitled to liberal construction of their pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *see also Hughes v. Rowe*, 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied*, 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977). However, "there is no 'duty [on the part] of the trial court ... to create a claim which [plaintiff] has not spelled out in his [or her] pleading....'" *Scogin v. United States*, 33 Fed.Cl. 285, 293 (1995) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.1975)) (alterations in original); *see also Minehan v. United States*, 75 Fed.Cl. 249, 253 (2007). The court, therefore, has done its best to give order to disorganization and to address the substance of plaintiffs' claims.

**The Court of Federal Claims does not have jurisdiction over plaintiffs' amended 2006–2007 refund claims for tax years 1978, 1979, and 1980**

Defendant claims that, pursuant to RCFC 12(b)(1), this court does not have subject matter jurisdiction over the plaintiffs' federal income tax refund claims for the years of 1978, 1979 and 1980. Specifically, defendant alleges:

(1) plaintiffs are collaterally estopped from amending their formal or informal refund requests filed during the years 1991–1998; (2) plaintiffs' alleged amendments did not relate back to the original refund filing, as the plaintiffs' amendments (a) were not made before the 1991–1998 claims were resolved by the court, and (b) are not "germane" to the 1991–1998 requests; and (3) in the alternative, the plaintiffs' 1978–1980 claims are barred by the doctrine of *res judicata*, and should be dismissed under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

■ For this court to exercise its jurisdiction over a plaintiffs federal tax refund claim, a petitioning party must first satisfy the tax refund schematic detailed in Title 26 of the Internal Revenue Code, (*see, e.g.*, 26 U.S.C. § 7422 (2006) and 26 U.S.C. § 6511 (2006)), which establishes that a claim for refund must be filed with the IRS before filing suit in federal court, and establishes strict deadlines for filing such claims. *See United States v. Clintwood Elkhorn Mining Co.*, 128 S.Ct. at 1514; *United States v. Dalm*, 494 U.S. 596, 609–10, 110 S.Ct. 1361, 108 L.Ed.2d 548, *reh'g denied*, 495 U.S. 941, 110 S.Ct. 2195, 109 L.Ed.2d 523 (1990); *Buser v. United States*, 85 Fed.Cl. at 256. Moreover, for a refund claim, the court only may hear claims for which the petitioning taxpayer has fulfilled all of his or her tax liabilities for the tax year in question before the refund claim is heard. *Flora v. United States*, 357 U.S. 63, 72–73, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958) ("*Flora I*"), *aff'd on reh'g*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 ("*Flora II*"), *reh'g denied*, 362 U.S. 972, 80 S.Ct. 953, 4

---

**25.** However, Mr. Larson indicates that he is not admitted as a member of any State or Federal Bar.

L.Ed.2d 902 (1960). In *Flora II,* the United States Supreme Court again clearly stated that 28 U.S.C. § 1346(a)(1) requires "payment of the full tax before suit ...,"[26] *Flora II,* 362 U.S. at 150–51, 80 S.Ct. 630; *see also Shore v. United States,* 9 F.3d 1524, 1526 (Fed.Cir.1993) ("The full payment requirement of Section 1346(a)(1) and *Flora* applies equally to tax refund suits brought in the Court of Federal Claims ....") (citing *Tonasket v. United States,* 218 Ct.Cl. 709, 711–12, 590 F.2d 343 (1978)).

 Before filing a claim in federal court, a plaintiff also is required to file a claim with the IRS for the amount of the alleged refund, pursuant to 26 U.S.C. § 7422(a), which states:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a); *see also Computervision Corp. v. United States,* 445 F.3d 1355, 1363 (Fed.Cir.), *reh'g and reh'g en banc denied,* 467 F.3d 1322 (Fed.Cir.2006), *cert. denied,* 549 U.S. 1338, 127 S.Ct. 2033, 167 L.Ed.2d 762 (2007). Essentially, section 7422(a) functions as a waiver of the government's sovereign immunity in tax refund suits. *Chicago Milwaukee Corp. v. United States,* 40 F.3d 373, 374 (Fed.Cir.1994); *see also Gluck v. United States,* 84 Fed.Cl. 609, 613 (2008). "[S]ection 7422(a) creates a jurisdictional prerequisite to filing a refund suit." *Id.* (citing *Chicago Milwaukee Corp. v. United States,* 40 F.3d at 374 (citing *Burlington N., Inc. v. United States,* 231 Ct.Cl.

222, 231 Ct.Cl. 222, 684 F.2d 866, 868 (1982))).

 Further, in order for a tax refund case to be duly filed in a federal court under section 7422(a), the filing must comply with the timing requirements set forth in 26 U.S.C. § 6511(a):

> The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress. A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied. When waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity.

*Block v. North Dakota ex rel. Bd. of Univ. and School Lands,* 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *see also Buser v. United States,* 85 Fed.Cl. at 257. To reiterate, the applicable language of section 6511(a) states:

> Claim for credit or refund of an overpayment of any tax imposed by this title ... shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid....

26 U.S.C. § 6511(a); *see also* 26 C.F.R. § 301.6511(a)-(1)(2009)("In the case of any tax ... If a return is filed, a claim for credit or refund of an overpayment must be filed by the taxpayer within 3 years from the time the return was filed or within 2 years from the time the tax was paid, whichever of such periods expires the later."). This statutory and regulatory language specifically imposes a *"filing deadline"* for tax refund claims

---

**26.** Section 1346(a)(1) reads:

The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally

assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws....

28 U.S.C. § 1346(a)(1) (2006).

brought under this section of the United States Code. *Comm'r v. Lundy,* 516 U.S. 235, 240, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996) (emphasis in original); *see also United States v. Clintwood Elkhorn Mining Co.,* 128 S.Ct. at 1516 (determining that the language of section 6511(a) "clearly state[s] that taxpayers must comply with the Code's refund scheme before bringing suit, including the filing of a timely administrative claim.").

In sum, Congress has provided strict statutory guidelines laying out the statute of limitations for the filing of a federal tax refund claim:

> Read together, the import of these sections is clear: unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been "erroneously," "illegally," or "wrongfully collected," §§ 1346(a)(1), 7422(a), may not be maintained in any court.

*United States v. Dalm,* 494 U.S. at 602, 110 S.Ct. 1361.

The plaintiffs argue that they duly filed amended refund requests, specifically, IRS Forms 1040X, in 2006 and 2007, for federal tax refunds stemming from the 1978, 1979 and 1980 tax years. Plaintiffs claim that the 2006–2007 Forms 1040X are valid amendments to their numerous, informal refund claims sent to the IRS between 1991 and 1998.[27]

In response, defendant argues that the plaintiffs' amended claims for tax years 1978–1980 are invalid because: (1) plaintiffs cannot meet the legal requirements of an amendment to an earlier claim, since the amendments are not germane to the 1991–1998 refund requests, and were not presented before those earlier claims were resolved, *see Computervision Corp. v. United States,* 445 F.3d at 1368–72; *Mobil Corp. v. United States,* 52 Fed.Cl. 327, 329 (2002), and (2) plaintiffs are collaterally estopped from asserting that they may amend their 1991–1998 refund claims, and their 1978–1980 claims are barred by *res judicata.*

*The plaintiffs' alleged "amended" refund claims do not relate back to the previously-filed informal claims*

Under certain circumstances, "[t]he Internal Revenue Code permits an amendment to the original claim, even after the limitations period has expired." *Mobil Corp. v. United States,* 52 Fed.Cl. at 329. The defendant claims that "[p]laintiffs, however, cannot meet the legal requirements for such an amendment because their purported amendments were not made before the 1991–98 claims were resolved, and those purported amendments are not germane to the 1991–1998 claims." Specifically, defendant asserts that the plaintiffs' alleged 2006–2007 amendments came "well after the limitations period had passed," and the plaintiffs' amendments could only relate back to the 1991–1998 refund requests if the amendments "were made before the 1991–1998 [refund] requests were rejected or denied."

 An amendment to a refund claim submitted after the expiration of the applicable statute of limitations may only be made if the original claim is still pending. *See Computervision Corp. v. United States,* 445 F.3d at 1372 (quoting *Allstate Ins. Co. v. United States,* 213 Ct.Cl. 96, 104, 550 F.2d 629, 633 (1977)) ("It is a rule of long standing that once a refund claim has been *disallowed,* it is not subject to amendment.") (emphasis in original); *Union Pac. R.R. Co. v. United States,* 182 Ct.Cl. 103, 116–17, 389 F.2d 437, 447 (1968) ("The disposition of a taxpayer's refund claim by allowance of the amount requested in full, however, precludes an amendment asserting an additional amount after the expiration of the statutory period for refund."). Absent such a principle, a taxpayer would be permitted to amend any refund claim in perpetuity. *See Mut. Life Ins. Co. of N.Y. v. United States,* 72 Ct.Cl. 204, 209, 49 F.2d 662, 664 (1931) ("A claim that has been rejected may not be amended after the statute of limitation has expired. To hold that a claim for refund made on a specific ground may, after it has been considered and rejected, be amended or enlarged so as to include an entirely different ground,

---

27. As the defendant's exhibits detail, the final, "amended," informal, federal tax refund claim

from the plaintiffs in the record before the court is dated April 7, 1998.

386

and to claim a much larger refund than that asserted in the original claim, would be to permit an indefinite postponement of the limitation for bringing suit and would nullify the provisions of the statute as to the time within which claims may be filed and the time within which suit may be brought.") (citation omitted), *cert. denied,* 284 U.S. 628, 52 S.Ct. 12, 76 L.Ed. 535 (1931); *Mobil Corp. v. United States,* 52 Fed.Cl. at 336 ("[A]n amendment is allowed only if submitted before IRS has duly considered and resolved the original claim."); *Wertz v. United States,* 51 Fed.Cl. 443, 449 n. 7 (2002).

■ Plaintiffs filed a claim in the United States Tax Court on December 12, 1985, challenging the assessed interest, penalties, and balance of tax liabilities from 1978–1980. The issues presented included:

- whether respondent's (the IRS) use of the net worth method to reconstruct petitioners' income was warranted and appropriate;
- whether petitioners (the Larsons) understated their income for 1978, 1979 and 1980 and whether those understatements were due to fraud under 26 U.S.C. § 6653(b);
- whether the period for assessment for the years 1978, 1979 and 1980 had expired at the time the notice of deficiency was issued; and
- whether petitioners are entitled to use income averaging in computing the tax for 1978, 1979 and 1980.

*Larson v. Comm'r,* 1994 WL 285892, at *4–13. In its 1994 ruling, the United States Tax Court addressed each one of these claims, and found in favor of the government. *Id.* The court found "no evidence that refutes the net worth analysis." *Id.* at *10. "We find petitioners' actions constitute a pattern of activity designed to fraudulently avoid reporting and payment of their federal income tax for 1978, 1979 and 1980," *id.* at *12, and that the Larsons were estopped from denying fraud because "a tax evasion conviction ... whether by trial or plea of guilty, estops the taxpayer from denying that the return for that year is fraudulent within the meaning of section 6653(b)." *Id.* The court also indicated that: "respondant's notice of defi-

ciency is timely with respect to all 3 taxable years [1978, 1979, 1980]." *Id.* "Accordingly, we hold that petitioners have not carried their burden of showing their entitlement to income averaging." *Id.* at *13. Therefore, the September 16, 1985 Notice of Deficiency assessments for tax years 1978–1980 were upheld in 1994 by the Tax Court, and the plaintiffs are foreclosed from claiming that the 2006–2007 filings "amend" the previous informal refund filings, as the Tax Court's formal decision settled the issues claimed in the 2006–2007 filings.

■ Plaintiffs, undeterred in the wake of the Tax Court ruling, filed two more refund requests with the IRS, on July 10, 1994 and December 3, 1994, respectively, arguing that the government had improperly charged interest on the 1978–1980 tax year balances in violation of plaintiff Duane Larson's plea agreement. Duane Larson challenged the IRS rejections of his additional refund claims in the United States District Court for the Central District of California. Mr. Larson contended that he should not be liable for the statutory interest that accrued prior to August 19, 1985 on his tax liabilities for 1978, 1979 and 1980. Ruling for the United States, the District Court held:

The plea agreement makes no reference to statutory interest. Likewise, the plain language of paragraph 13 of the plea agreement indicates that the government will *not* cease to pursue [plaintiffs] civil liabilities. The plea agreement, accordingly, related only to the criminal proceeding and did not bar additional civil assessments of tax, interest, and penalties....

[Plaintiff] had failed to offer any evidence, aside from self-serving statements of his subjective understanding of the plea agreement, that the Government had waived statutory interest in the plea agreement. The most objective means of evaluating the plea agreement are the actual terms of the agreement. Those terms overwhelmingly indicate that the plea agreement did not resolve, or purport to resolve, [plaintiffs] civil tax liabilities, including statutory interest.

*Larson v. United States,* No. 98–902, slip op. at 15–16 (C.D.Cal.1999) (emphasis in original; brackets added). The District Court's findings were affirmed by the United States Court of Appeals for the Ninth Circuit on January 8, 2001. *Duane W. Larson v. United States,* 2 Fed.Appx. 847 (9th Cir.2001). Thus, as discussed above, a refund claim, informal or formal, cannot be amended or perfected after it has been denied or rejected, and after the period of limitations has expired. In the case before this court, the plaintiffs' current claims regarding the assessment of statutory interest have been foreclosed by the earlier 1998–2001 litigation.

*Plaintiffs' amendments are not germane to the 1991 and 1998 refund requests*

▮▮▮▮▮ "The purpose of requiring the amended claim to be 'germane' to the original administrative claim is to 'prevent surprise and to give adequate notice to the [IRS] of the nature of the claim.' " *Parker Hannifin Corp. v. United States,* 71 Fed.Cl. 231, 235 (2006) (*quoting Western Co. of N. Am. v. United States,* 323 F.3d 1024, 1034 (Fed.Cir.2003)) (brackets in original). The "germaneness" doctrine applies:

> where the taxpayer (1) files a formal claim within the limitations period making a specific claim; and (2) after the limitations period but, while the [IRS] still has jurisdiction over the claim, files a formal amendment raising a new legal theory— not specifically raised in the original claim—that is "germane" to the original claim, that is, it depends upon facts that the IRS examined or should have examined within the statutory period while determining the merits of the original claim.

*Computervision Corp. v. United States,* 445 F.3d at 1370. As the United States Supreme Court explained:

> Where a claim which the Commissioner could have rejected as too general, and as omitting to specify the matters needing investigation, has not mislead him but has been the basis of an investigation which disclosed facts necessary to his action in making a refund, an amendment which merely makes more definite the matters already within [the IRS'] knowledge, or which, in the course of [the IRS] investiga-

tion [the IRS] would naturally have ascertained, is permissible. On the other hand, a claim which demands relief upon one asserted fact situation and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim.

*United States v. Andrews,* 302 U.S. 517, 524, 58 S.Ct. 315, 82 L.Ed. 398 (1938) (brackets added); *see also Computervision Corp. v. United States,* 445 F.3d at 1370; *Pink v. United States,* 105 F.2d 183, 187 (2nd Cir. 1939) ("Whether a new ground of recovery may be introduced after the statute has run by amending a pending claim filed in time depends upon the facts which an investigation of the original claim would disclose. Where the facts upon which the amendment is based would necessarily have been ascertained by the [IRS][C]ommissioner in determining the merits of the original claim, the amendment is proper.") (brackets added); *Parker Hannifin Corp. v. United States,* 71 Fed.Cl. at 234.

Without adherence to this principle of germaneness, a taxpayer might be permitted to amend any refund claim in perpetuity. Indeed, a Judge of this court has restated the practical application of only allowing claims "germane" to the original to proceed:

> To hold that a claim for refund made on a specific ground may, after it has been considered and rejected, be amended or enlarged so as to include an entirely different ground, would be to permit an indefinite postponement of the statute of limitation for bringing suit and would nullify the provisions of the statute.

*Mobil Corp. v. United States,* 52 Fed.Cl. at 336 (quoting *Mut. Life Ins. Co. of N.Y. v. United States,* 72 Ct.Cl. at 209, 49 F.2d at 664).

Defendant argues that none of the plaintiffs' 2006 and 2007 refund claims are germane to the multiple refund claims plaintiffs originally filed between 1991 and 1998, as each of the original refund claims "alleged specific grounds for relief." Defendant alleges that the grounds upon which the 2006 and

2007 refund claims lie are specific, and distinct from the previous refund claims.

Defendant described plaintiffs' original 1991–1998 grounds requesting relief from both the courts and the IRS as including the following:

- the jeopardy assessments were made outside the relevant statute of limitations;
- the IRS improperly utilized the net worth method to reconstitute plaintiffs' income;
- plaintiffs did not understate their income due to fraud or negligence;
- plaintiffs were entitled to use income averaging; and
- the IRS wrongfully collected interest accrued prior to August 15, 1985 in violation of Mr. Larson's plea agreement.

(citations omitted). Whereas, the plaintiffs' alleged different grounds in the 2006–2007 refund claims, including:

- the IRS over collected (and double collected) amounts due in tax years 1978–1980;
- the IRS, in violation of 26 U.S.C. § 6213(a), improperly collected the amounts while the Tax Court action was still pending;
- interest could not properly be charged on fraud penalties assessed in years 1978–1980; and Mr. Larson's social security account was not properly credited for taxes paid.

(citation omitted).

The distinction between the plaintiffs' original and amended claims is apparent even after a cursory analysis. In plaintiffs' original refund claims, submitted between 1991 and 1998, plaintiffs primarily argue about how the allegedly improper taxes and penalties had been calculated, whether plaintiffs were outside the statute of limitations for filing new claims, and the impact of plaintiff Duane Larson's criminal conviction on the calculation. For instance, plaintiffs' arguments include allegations that the IRS used improper methods of calculating the plaintiffs' 1978–1980 taxes (i.e., "net worth" as opposed to "income averaging"), and that the IRS improperly added fraud and interest penalties to plaintiffs' tax deficiencies (i.e., the plaintiffs did not understate their 1979–1980 income and interest was assessed prior to the plea agreement). As the Tax Court did not affirm the IRS' calculations of plaintiffs' tax obligation until June 1994, it would be illogical for the IRS to investigate collection or crediting of additional amounts due at the time plaintiffs submitted their first refund claims in November 1991 and January 1992.

In the "amended" claims submitted in 2006–2007, however, the plaintiffs argue against the methods by which the allegedly, improper tax liabilities had been collected. Indeed, the plaintiffs argue that the IRS improperly, "excessively double assessed" penalties, including for fraud, failed to properly credit to Social Security the amounts they had paid, and collected the 1978–1980 liabilities while the Tax Court proceedings were still open, ostensibly in violation of 26 U.S.C. § 6213.

Plaintiffs also argue that there was an additional investigation performed by the IRS as a result of plaintiffs' August 9, 2002 Form 1040X amended refund request submitted to the IRS for the 1979 tax year. Defendant argues that this opening of an inquiry by the IRS was a mistake, as "[t]he IRS ... [was] unaware of the prior litigation involving 1978–1980," when commencing this review of the plaintiffs' amended return. Nonetheless, that review resulted in several adjustments to plaintiffs' accounts and subsequently two refunds to the plaintiffs in the amount of $78,672.16 for tax year 1978, "that was later adjudicated as untimely," and another $31,770.01, also for tax year 1978, "that was barred by both res judicata and the applicable statute of limitations." In its brief in support of its motion to dismiss, defendant indicates that, "should any of plaintiffs' claims survive this motion to dismiss, defendant intends to file a counterclaim for the $31,770.01 and to seek a setoff of the $78,672.16."

Therefore, the court concludes that because the plaintiffs' original claims filed between 1991 and 1998 cover the methods and calculations of the IRS, these 1991–1998

claims are not germane to the 2006–2007 claims submitted by the plaintiffs, and must be rejected by this court.

*The doctrine of collateral estoppel and res judicata bar plaintiffs from reasserting their claims regarding 1978, 1979 and 1980 tax years*

▪▪▪ In the alternative, the defendant also raises the doctrine of *res judicata* as barring plaintiffs' claims related to their federal income taxes for tax years 1978–1980. The United States Supreme Court summarized the doctrines of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion) as follows:

> A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies...." *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355 (1897). Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877); *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); 1B J. Moore, Federal Practice ¶ 0.405[1], pp. 621–624 (2d ed.1974) (hereinafter 1B Moore); Restatement (Second) of Judgments § 47 (Tent. Draft No. 1, Mar. 28, 1973) (merger); *id.*, § 48(bar). Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); Scott, Collateral Estoppel by Judgment, 56 Harv. L.Rev. 1, 2–3 (1942); Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, Apr. 15, 1977) (issue preclusion). Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. *Southern Pacific R. Co., supra*, at 49, 18 S.Ct. 18; *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 61 L.Ed. 1148 (1917). To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Montana v. United States*, 440 U.S. at 153–54, 99 S.Ct. 970 (footnote omitted).

▪▪ The United States Court of Appeals for the Federal Circuit has established that "a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action." *Int'l Air Response v. United States*, 302 F.3d 1363, 1368 (Fed.Cir.2002) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. at 398, 101 S.Ct. 2424), *reh'g denied*, 324 F.3d 1376 (Fed.Cir.), *reh'g en banc denied*, 324 F.3d 1380 (Fed.Cir.2003); *see also In re Deckler*, 977 F.2d 1449, 1452 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (Fed.Cir.1992). According to the United States Supreme Court, application of the doctrine of collateral estoppel "is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Montana v. United States*, 440 U.S. at 153, 99 S.Ct. 970 (citing *S. Pac. R.R. Co. v. United States*, 168 U.S. at 49, 18 S.Ct. 18). By affording a claimant only one opportunity to obtain redress, the doctrine conserves judicial resources, fosters reliance upon judicial decisions, and protects litigants from vexatious and needless litigation. *See Martin v. United States*, 30 Fed.Cl. 542, 546 (1994), *aff'd*, 41 F.3d 1519, 1994 WL 623212 (Fed.Cir.1994) (table); *Lins v. United States*, 4 Cl.Ct. 772, 777 (1984), aff'd, 758 F.2d 666 (Fed.Cir.1984) (table). Collateral estoppel serves the dual purpose of "protect[ing] litigants from the burden of relitigating an identical issue and promot[ing] judicial economy by preventing needless litigation." *Morgan v. Dep't of En-*

*ergy,* 424 F.3d 1271, 1274 (Fed.Cir.2005) (citing *Arkla, Inc. v. United States,* 37 F.3d 621, 624 (Fed.Cir.1994)) (brackets added).

 The United States Court of Appeals for the Federal Circuit, following the precedent set by the United States Supreme Court, also discussed issue preclusion and claim preclusion, writing that, "[u]nlike issue preclusion, which only bars matters actually litigated in a prior proceeding, claim preclusion forecloses matters that, although never litigated or even raised, could have been advanced in an earlier suit." *Carson v. Dep't of Energy,* 398 F.3d 1369, 1375, n. 8 (Fed. Cir.), *reh'g denied* (Fed.Cir.2005). The Federal Circuit, in further discussing the doctrine of *res judicata,* or claim preclusion, specified that "res judicata applies if (1) the prior decision was rendered by a forum with competent jurisdiction; (2) the prior decision was a final decision on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." *Id.* at 1375; *see also Acumed LLC v. Stryker Corp.,* 525 F.3d 1319, 1323 (Fed.Cir.), *cert. denied,* —— U.S. ——, 129 S.Ct. 24, 171 L.Ed.2d 927 (2008) ("Under the doctrine of claim preclusion, 'a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action.'" (quoting *Parklane Hosiery Co. v. Shore,* 439 U.S. at 327 n. 5, 99 S.Ct. 645)) (footnote omitted); *Jet, Inc. v. Sewage Aeration Sys.,* 223 F.3d 1360, 1362 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2000); *Int'l Nutrition Co. v. Horphag Research, Ltd.,* 220 F.3d 1325, 1328 (Fed.Cir.2000) (defining the third element as involving "the same claims that were raised, or could have been raised, in the prior action."); *Schickler v. United States,* 54 Fed.Cl. 264, 270 (2002), *appeal dismissed,* 70 Fed. Appx. 584 (Fed.Cir.2003) (citing *Blonder–Tongue Labs., Inc. v. University of Ill. Found.,* 402 U.S. 313, 323–24, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)). Further clarifying the third requirement in terms of claim preclusion, the Federal Circuit wrote:

> A subsequent suit is barred if it arises out of the same subject matter as a previous suit and which, "through the exercise of diligence, could have been litigated in a prior suit." [*Restatement (Second) of Judgments* § 24 (1982).] What constitutes the subject matter of a suit depends on the factual basis of the complaint, and any cause of action that arises out of the same facts should be litigated in the same action. *See id.* at 630; *see also Flores v. Edinburg Consol. Independent School Dist.,* 741 F.2d 773, 777 (5th Cir.1984), *reh'g denied,* 747 F.2d 1465 (1984) (table).

*United Techs. Corp. v. Chromalloy Gas Turbine Corp.,* 189 F.3d 1338, 1344 (Fed.Cir.), *reh'g denied* (Fed.Cir.), *en banc suggestion declined* (Fed.Cir.1999).

*Plaintiffs are precluded from asserting that they may amend their informal and formal refund claims filed between 1991 and 1998 for tax years 1978, 1979 and 1980*

 Under the doctrine of issue preclusion, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Restatement (Second) of Judgments* § 27 (1982); *see also Tex. Instruments Inc. v. Cypress Semiconductor Corp.,* 90 F.3d 1558, 1568 (Fed.Cir.) (citing *Restatement (Second) of Judgments* § 27 in the same context), *reh'g denied, en banc suggestion declined* (Fed.Cir.1996), *cert. denied,* 520 U.S. 1228, 117 S.Ct. 1818, 137 L.Ed.2d 1027 (1997). Issue preclusion is the modern term for both direct and collateral estoppel. 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4416 at 386 (2d ed.2002). The doctrine of issue preclusion:

> is available whether or not the second action involves a new claim or cause of action. If the second action involves the same claim or cause of action as the first, issue preclusion may be called direct estoppel. If a new claim or cause of action is involved, issue preclusion is commonly called collateral estoppel.

*Id.* at 393.

 The United States Court of Appeals for the Federal Circuit specifies that a party

asking the court to apply collateral estoppel must establish that:

> (1) the issue at stake is identical to the one involved in the prior proceeding;
>
> (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Dana v. E.S. Originals, Inc.,* 342 F.3d 1320, 1323 (Fed.Cir.2003) (quoting *Pleming v. Universal–Rundle Corp.,* 142 F.3d 1354, 1359 (11th Cir.1998)); *see also In re Trans Tex. Holdings Corp.,* 498 F.3d 1290, 1297 (Fed. Cir.2007) (quoting *Jet, Inc. v. Sewage Aeration Sys.,* 223 F.3d at 1365–66); *Shell Petroleum, Inc. v. United States,* 319 F.3d 1334, 1338 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed Cir.), *cert. denied,* 540 U.S. 1046, 124 S.Ct. 805, 157 L.Ed.2d 693 (2003); *Restatement (Second) of Judgments* §§ 27, 39 (1982).

*(a) Identical issues*

▮ The following guidelines, articulated by the United States Supreme Court, albeit lengthy, should be instructive to the Larsons to help them understand why their tax claims are precluded from further, repetitive litigation:

> It is first necessary to understand something of the recognized meaning and scope of res judicata, a doctrine judicial in origin. The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." The judgment puts an end

to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.

But where the second action between the same parties is upon a different cause or demand, the principle of res judicata is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time. But matters which were actually litigated and determined in the first proceeding cannot later be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel. In this sense, res judicata is usually and more accurately referred to as estoppel by judgment, or collateral estoppel.

These same concepts are applicable in the federal income tax field. Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or nonliability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year. But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit. Collateral estoppel operates, in other words, to relieve the government and the taxpayer of "redundant litigation of the identical question of the statute's application to the taxpayer's status."

But collateral estoppel is a doctrine capable of being applied so as to avoid an undue disparity in the impact of income tax liability. A taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some years thereafter. But a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes. If such a determination is then perpetuated each succeeding year as to the taxpayer involved in the original litigation, he is accorded a tax treatment different from that given to other taxpayers of the same class. As a result, there are inequalities in the administration of the revenue laws, discriminatory distinctions in tax liability, and a fertile basis for litigious confusion. Such consequences, however, are neither necessitated nor justified by the principle of collateral estoppel. That principle is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally. It is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers.

And so where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. If the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation. And where the situation is vitally altered between the time of the first judgment and the second, the prior determination is not conclusive.... [A] judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable.... It naturally follows that an inter-posed alternation in the pertinent statutory provisions or Treasury regulations can make the use of the rule unwarranted.

Of course, where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination in a subsequent proceeding even though the cause of action is different. And if the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change. But if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case. Thus the second proceeding may involve an instrument or transaction identical with, but in a form separable from, the one dealt with in the first proceeding. In that situation, a court is free in the second proceeding to make an independent examination of the legal matters at issue. It may then reach a different result or, if consistency in decision is considered just and desirable, reliance may be placed upon the ordinary rule of stare decisis. Before a party can invoke the collateral estoppel doctrine in these circumstances, the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment.

*Comm'r v. Sunnen,* 333 U.S. 591, 597–602, 68 S.Ct. 715, 92 L.Ed. 898 (1948) (footnotes and citations omitted).

■ In this case, although there is a gap in time between the multiple combinations of formal and informal refund claims submitted to the IRS by the plaintiffs, as documented in the submissions to the IRS and the cases filed by the plaintiffs between 1991–1999, multiple times in 2002, and between 2006 to 2007, the underlying issues have remained the same. The issues repeatedly raised concern the finality of the decisions of the ruling with respect to plaintiffs' 1978, 1979 and 1980 tax liability, including interest and penalties

and the impermissibility of plaintiffs' untimely, attempted, amendments and claims to their 1978, 1979 and 1980 tax returns for those allegedly, illegally assessed taxes, penalties, and interest. The following is a summary of court actions filed by plaintiffs and court decisions on the issues raised, beginning with the United States Tax Court:

- *"The Tax Court action"*
 - *Larson v. Comm'r,* 67 T.C.M. (CCH) 3154 (1994), *aff'd,* 60 F.3d 830, 1995 WL 410986 (8th Cir.1995) (table).
- *"The 1997 filed actioni"*
 - *Larson v. United States,* No. 97–782 (CD.Cal.1998) (filed October 3, 1997) (alleged violation of plea agreement regarding assessed pre-August 19, 1985 interest).

 ■ Court dismissed (without prejudice) for lack of subject matter jurisdiction for failure to file an administrative claim with the IRS for the full amount prior to filing suit on March 31, 1998.
- *"The 1998 filed action"*
 - *Larson v. United States,* No. 98–902 (C.D.Cal.1999) (filed October 21, 1998; dismissed November 29, 1999, with prejudice, for lack of subject matter jurisdiction).
 - *aff'd, Larson v. United States,* 2 Fed. Appx. 847 (9th Cir.2001) (for the reasons stated in the District Court's opinion).

 ■ The District Court dismissed, with prejudice, plaintiff Duane Larson's contention that he is not liable for the interest accrued prior to August 19, 1985. Moreover, the court found that plaintiff was not entitled to any refund because the tax liability had been fully paid.
- *"The two actions filed in 2004"*
 - *Larson v. United States,* No. 04–939 (C.D.Cal.2006) (filed July 9, 2004; decided April 18, 2006) (plaintiffs alleged improper jeopardy assessments and monies taken from other tax years without plaintiffs' knowledge).
 - *Larson v. United States,* No. 04–1176 (C.D.Cal.2005) (filed October 7, 2004, decided May 4, 2005) (this case, also

for refund of excess taxes for 1978, 1979 and 1980, was found by the court to be similar to case nos. 97–782 and 98–902).

■ In case no. 04–1176, plaintiffs alleged that the IRS could not impose jeopardy assessments after the Tax Court decision.

■ In the same case, plaintiffs also alleged that the IRS had caused "double" collections to be made because IRS records did not properly reflect payments by Mr. Larson.

■ The court concluded that the decision reached in case no. 98–902 had previously dismissed all of the plaintiffs' claims for the 1978, 1979 and 1980 tax years.

■ The two cases were dismissed by the District Court with prejudice for the same reasons, given their nearly identical complaints for the same tax, and reliance on the same facts.

■ *aff'd, Larson v. United States,* 175 Fed.Appx. 814 (9th Cir.2006). As both of these actions were found to be "identical," they were combined in the appeal to the Ninth Circuit Court of Appeals. The Ninth Circuit, again, clearly articulated in its 2006 opinion that "[b]ecause the Larsons did not file their administrative claim for a tax refund within two years of paying the tax, the administrative claim was untimely under 26 U.S.C § 6511(a) and 26 C.F.R. § 301.6511(a)–1(a)(2)." *Larson v. United States,* 175 Fed. Appx. 814, 814–15 (9th Cir.2006). "The district court therefore lacked subject matter jurisdiction over the Larsons' tax refund action. *See* 26 U.S.C. § 7422(a)." *Id.* (citations omitted).

## (b) Actually litigated

 For an issue to be precluded in a subsequent action, in addition to being identical, it must have been "actually litigated and determined in the original action.... Only upon such matters is the judgment conclusive in another action." *Cromwell v. County of Sac,* 94 U.S. at 353. An issue is "actually

litigated" when it is: 1) appropriately raised, by the pleadings or otherwise; 2) submitted for determination; and 3) determined by the court. *See Restatement (Second) of Judgments* § 27, comment d (1982); *Banner v. United States,* 238 F.3d 1348, 1354 (Fed.Cir. 2001) (holding that, despite plaintiff's assertions to the contrary, the relevant issues were "actually litigated," because they were raised by the pleadings, submitted for determination, and actually decided by the court); *Shell Petroleum, Inc. v. United States,* 319 F.3d at 1339. Moreover, "[c]ollateral estoppel will bar the relitigation of any matters in a second proceeding concerning a second taxable year that were actually presented and determined in the first suit." *Furst v. United States,* 230 Ct.Cl. 375, 385, 678 F.2d 147, 154 (1982) (citing *Comm'r v. Sunnen,* 333 U.S. at 598, 68 S.Ct. 715). In the instant case, both parties have had ample opportunity to address the issues in their briefs in the Tax Court, various District Courts and Federal Circuit Courts on appeal. For the most part, plaintiffs' filings currently before this court proffer essentially the arguments previously urged, albeit phrased differently.

Plaintiffs also argue that when the District Court dismissed for lack of subject matter jurisdiction over the plaintiffs' claims, any findings made by the court are "void and of no effect." Plaintiffs, however, misunderstand the impact of the dismissals of their claims, which were based on the facts of the claims presented for the 1978, 1979 and 1980 tax years and on the preclusive nature of the earlier decisions on the same subject. Because previous courts, including the United States Tax Court, the United States District Court for the Central District of California and the United States Courts of Appeal for the Eighth and Ninth Circuits, have found the IRS assessments, including penalties and interest, to be valid, and the time for plaintiffs to have filed administrative claims challenging those assessments, penalties, and interest has passed, plaintiffs' claims are precluded from relitigation in the instant action.

### (c) Necessary to judgment

The third factor of the issue preclusion test is that the issues in question in the current lawsuit must have been necessary to the judgment in the original proceeding. *See In re Trans Tex. Holdings Corp.,* 498 F.3d at 1297. According to the United States Court of Appeals for the Federal Circuit, "the purpose of the ['necessary to the judgment'] requirement is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation." *Mother's Rest., Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1571 (Fed.Cir.1983). Relitigation of an issue of fact or law in a suit based on a different cause of action may be precluded if the court decides that the issue was necessary to the resulting judgment in the first action. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (*citing Montana v. United States,* 440 U.S. at 153, 99 S.Ct. 970); *see also San Remo Hotel, L.P. v. City & County of San Francisco,* 545 U.S. 323, 336 n. 16, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005).

The plaintiffs assert that their claims are not precluded because the Ninth Circuit did not write anything at all about plaintiffs' earlier, filed refund requests, for which reason plaintiffs argue the court's judgment did not address or resolve any of them. Plaintiffs also assert that the claims were never expressly rejected by the IRS Commissioner. As stated by the plaintiffs, "[t]he IRS has never answered, considered, or resolved *any* of Larson's refund claims," therefore never expressly rejecting them. (emphasis in original). The defendant argues, however, that "[t]he issue squarely placed before [the Ninth Circuit Court of Appeals in case nos. 05–55789 and 05–55892] was whether the claims for refund at issue could properly be considered amendments to the alleged earlier-filed claims for refund." There is no need for the IRS or the courts to explicitly respond to each one of the plaintiffs' earlier-filed refund claims or issues raised, if the IRS or the particular court, after review of the parties' submissions, concludes that the IRS taxes, penalty, and interest assessments are valid and proper, and the court has ruled on plaintiffs' claims as presented to them. In the case of plaintiffs' refund claims in this court, each of the feder-

al courts, after review, found plaintiffs' claims to be without merit.

### (d) Full and fair opportunity to litigate

The last requirement for an issue preclusion analysis is that "the party defending against preclusion had a full and fair opportunity to litigate the issues" in an earlier action or in these case actions. *Ammex, Inc. v. United States,* 384 F.3d 1368, 1371 (Fed.Cir.2004), *cert. denied,* 544 U.S. 948, 125 S.Ct. 1697, 161 L.Ed.2d 525 (2005); *see also Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. at 333, 91 S.Ct. 1434 (holding that the person against whom issue preclusion is asserted should be allowed to demonstrate "that he did not have 'a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time'" (quoting *Eisel v. Columbia Packing Co.,* 181 F.Supp. 298, 301 (D.Mass.1960))); *Masco Corp. v. United States,* 303 F.3d 1316, 1329 (Fed.Cir.2002).

■ When determining whether a party was given a full and fair opportunity to litigate the relevant issues, factors to be considered include: "(1) whether there were significant procedural limitations in the prior proceeding, (2) whether the party had an incentive to litigate fully the issue, and (3) whether effective litigation was limited by the nature or relationship of the parties." *Banner v. United States,* 238 F.3d at 1354; *see also Shell Petroleum, Inc. v. United States,* 319 F.3d at 1340 (holding that the "full and fair opportunity to litigate" requirement was met because the plaintiff was fully represented by counsel, had a monetary incentive to litigate, and effective litigation was not hindered in any way). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 440 U.S. at 153–54, 99 S.Ct. 970.

■ The plaintiffs have been afforded multiple, sufficient, full and fair opportunities to litigate their federal income tax refund issues. There is no evidence in the record that the plaintiffs were not afforded opportunities to fully litigate the issues raised in the courts or with the IRS. Nor have the plaintiffs raised an instance of procedural limitations imposed upon the plaintiffs with respect to prior tax actions. Although the plaintiffs have been attempting to reassert their refund claims for tax years 1978, 1979 and 1980 for a long period of time, and repeatedly, there is no evidence that plaintiffs' litigation of their issues in the 1998 or 2004 actions were hindered by either the nature or the relationship of the parties. The legal and factual issues raised by the plaintiffs' claims for refunds for tax years 1978–1980 have been fully litigated, and repeatedly decided against the plaintiffs.

Plaintiffs' decision to proceed *pro se* is one of their own choosing, rather than a result of external pressures. The court also notes that plaintiff Duane Larson is a law school graduate, albeit, apparently, not a member of the bar. Based on the record before the court, including the decisions by earlier federal courts, the number of the briefs filed by both sides in those courts, and in this court, it is clear that plaintiffs already have had full and fair opportunity to have their claims heard in the trial courts and again during review of those claims upon appeal. To allow plaintiffs to relitigate the same issues in this instant action would not be in the interests of judicial economy and would be inconsistent with existing case precedent.

*The plaintiffs' refund claims for tax years 1978, 1979 and 1980 are also barred by the doctrine of res judicata*

As indicated above, "res judicata applies if (1) the prior decision was rendered by a forum with competent jurisdiction; (2) the prior decision was a final decision on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." *Carson v. Dep't of Energy,* 398 F.3d at 1375.

*The prior suit was final on the merits*

■ "[I]f a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is *res judicata* as to any subsequent proceeding involving

the same claim and the same tax year." *Comm'r v. Sunnen*, 333 U.S. at 598, 68 S.Ct. 715. As previously noted, plaintiffs' claims for the 1978, 1979 and 1980 tax years have received comprehensive review and are the subject of conclusive judgments on the merits by multiple courts. The plaintiffs disagree, however, and argue that:

> Any refund claim cases following Case # 98–902 that rely upon 26 USC 6511(a) and 26 USC 7422(a) for **subject matter jurisdiction,** and that involve the same tax years *are NOT barred by Res Judicata* because there was no "final judgment on the merits" in Case # 98–902 regarding refunds based on 26 USC 6511(a) and 26 USC 7422(a), because the Court lacked [sic] *expressly refused to address the government's subject matter jurisdiction argument* for all 3 tax years in Case # 98–902.

(emphasis in original).

▮ Plaintiffs have previously had numerous bites at the apple in a variety of courts. Defendant also points out that of the four counts presented in United States District Court case no. 98–902: [28]

> The Government, defendant in that action, sought to dismiss only Mr. Larson's declaratory judgment claim. [The Government] never sought to dismiss the Mr. Larson's refund claim for lack of subject matter jurisdiction. Rather, [the Government] sought summary judgment on all of the remaining claims on the grounds that the plea agreement did not prevent defendant from collecting "pre 8–19–85 interest" and argued, in the alternative, that plaintiffs' refund claim must be capped, pursuant to § 6511(b), to amounts paid within the two-year period immediately following plaintiffs' refund claims.

(brackets added). Defendant's assertions regarding the District Court action in case no. 98–902 are corroborated by the language used in the judgment. Specifically, the District Court determined:

**28.** In the 1998 action, plaintiff asserted individual claims for: (1) a declaratory judgment; (2) & (3) two separate claims for breach of a plea agreement; and (4) for "a refund per 28 USC

1. Judgment shall be entered dismissing, with prejudice, petitioner Larson's cause of action for declaratory relief, for lack of subject matter jurisdiction.

2. Summary judgment shall be entered in favor of the United States, and against petitioner Larson, as to the remaining causes of action of his petition and complaint.

3. Petitioner Larson shall take nothing by way of his petition and complaint, and his action shall be dismissed, with prejudice.

*Larson v. Comm'r*, No. 98–902, slip op. at 25–26 (C.D.Cal.1999).

Despite the evidence of this conclusive language, plaintiffs argue that the "crossed out" language in the District Court's "Statement of Uncontroverted Facts and Conclusions of Law" represented proof that "the court refused to rule on the refund request subject matter jurisdiction raised by respondent when he argued 26 USC 6511(a) and 26 USC 7422(a) provided the [District] court with subject matter jurisdiction through Larson's refund request dated 4–7–98." (emphasis omitted). It is correct that the signed, District Court Judge's Order is a copy of a submission from the government with sentences and phrases crossed out as deletions and added language interlineated. However, the portions quoted immediately above were not crossed out, and the Order entered in the District Court's docket on November 29, 1995 was endorsed with the Judge's signature and the date entered of November 24, 1999.

Moreover, the same District Court Judge, in case no. 98–902, also entered another Order on the same date, which stated:

> There is no genuine issue of material fact as to whether the petitioner is entitled to the refund of statutory interest he paid on his 1978, 1979, and 1980 Federal income tax liabilities which accrued prior to [the] August 19, 1985 [date of Duane Larson's plea agreement].

1346(a), or per 26 USC 6511 and 7422, of all improperly assessed and collected pre 8–19–85 interest...."

Summary judgment accordingly shall be entered in favor of respondent, the United States of America, and against petitioner Duane W. Larson *as to the remaining causes of action* of his Petition and Complaint filed in this action.

*Larson v. United States*, No. 98–902, slip op. at 25 (C.D.Cal.1999) (brackets added). Plaintiffs' assertion that the District Court judgment in case no. 98–902 did not reach the question of whether the refund claims were valid under 26 U.S.C § 6511(a) and 26 U.S.C § 7422(a) cannot survive the weight of contradictory evidence that these claims were adjudicated in that action, and the decision was affirmed by the Ninth Circuit Court of Appeals. *See Larson v. United States*, 2 Fed.Appx. 847.

*The same cause of action and the same parties or their privies were involved in both cases*

██ Duane Larson has been involved in all of the actions previously mentioned, including the actions filed in the United States District Court in 2004, case nos. 04–939 and 04–1176, and the combined appeal therefrom. Moreover, the cases all concern the jointly filed and signed income tax returns for plaintiffs Duane and Pamela Larson. In the dispositive 2004 lawsuits and subsequent appeals to the Ninth Circuit Court of Appeals, Duane and Pamela Larson were both plaintiffs. As noted, the facts and issues raised by the current complaint for refunds related to tax years 1978–1980 have been adjudicated multiple times prior to this instant action.

Plaintiffs' argument in the instant action, that there are excess amounts of tax liabilities illegally collected from the plaintiffs with respect to years 1978–1980, is entirely reminiscent of arguments proffered by the plaintiffs in the 1998 and 2004 District Court actions. The District Court Judge who presided in both actions filed in 1998 and 2004, noted in her 2005 opinion in case no. 04–1176:

> The Larsons seek to obtain a refund of taxes that were collected pursuant to a November 23, 1994 jeopardy assessment that they contend was in excess of the Tax Court's decision in 1994. This "excess amount" is the same overpayment that Mr.

Larson sought to recover in the 1998 Action. As the Court reached a decision on the merits in the 1998 Action and dismissed all of Mr. Larson's claims for overpayment arising from the same subject tax years, plaintiff's claims in this matter are barred by the doctrine of *res judicata* irrespective of Mr. Larson's ability to devise creative new theories of recovery.

*Larson v. United States*, No. 04–1176, slip op. at 4 (C.D.Cal.2005). None of the "creative new theories of recovery" resonated with the District Court Judge. *Id.* Thus, with respect to the application of the doctrine of *res judicata* to plaintiffs' claims, that doctrine already has been applied, and its application affirmed with respect to plaintiffs' tax claims for the 1978, 1979 and 1980 tax years.

██ The identity of the transactional facts underlying each action also would bar plaintiffs' current actions under the doctrine of *res judicata*. The transactional approach to *res judicata* is detailed in the *Restatement (Second) of Judgments:*

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . ., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

> What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Restatement (Second) of Judgments* § 24 (1982). The United States Court of Appeals for the Federal Circuit has followed the transactional approach in applying the doctrine of *res judicata*. *See, e.g., Acumed LLC v. Stryker Corp.*, 525 F.3d at 1323 ("In apply-

ing the doctrine of [claim] preclusion,[29] this court is guided by the *Restatement (Second) of Judgments*.") (citing *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 477 n. 7, 478–79 (Fed.Cir. 1991)). "Accordingly, the court looks at the underlying cluster of factual circumstances to answer the question whether the issues raised, and relief sought before this court, could have been raised in the prior litigation." *Tindle v. United States*, 56 Fed.Cl. 337, 346–47 (2003).

As a Judge of this court noted in *Smith v. United States*:

> Plaintiff's instant claim is one for money damages . . . for the period between his court-martial and the date he otherwise would have been discharged. Although such a claim differs in its request for monetary relief from his earlier claim for habeas relief, it would appear that the core or nucleus of operative facts on which both claims are founded are the same or very nearly the same, i.e., whether the presiding military judge was a member in good standing of his state bar, pursuant to 10 U.S.C. 826(b).

*Smith v. United States*, 59 Fed.Cl. 64, 67 (2003), *aff'd*, 117 Fed.Appx. 95 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2004); *see also Nevada v. United States*, 463 U.S. 110, 130, 103 S.Ct. 2906, 77 L.Ed.2d 509 (determining that courts must first determine whether the "same cause of action" is the basis for the subsequent lawsuit), *reh'g denied*, 464 U.S. 875, 104 S.Ct. 210, 78 L.Ed.2d 185 (1983).

■ The Larson plaintiffs have attempted to repackage their theory of refund recovery a number of times, but the underlying "transactional" facts regarding their 1978,

1979 and 1980 tax liability have remained the same. In short, the plaintiffs seek a refund from payments made on their 1978–1980 tax liability. "Altering the theory of recovery does not create a new claim under the transactional approach." *Tindle v. United States*, 56 Fed.Cl. at 347. Therefore, although the plaintiffs argue that their most recent action in this court is distinguishable from their previous federal court lawsuits, the plaintiffs' instant action once again challenges their tax liability for the 1978–1980 tax years. The cases all share a common, fundamental issue: whether plaintiffs may amend their earlier-filed refund requests for tax years 1978–1980. Plaintiffs' redundant, refund claims for tax years 1978–1980 display an "[a]bsen[ce] [of] significant changes in controlling fact or legal principles. . . ." *Montana v. United States*, 440 U.S. at 157, 99 S.Ct. 970 (brackets added). Therefore, the plaintiffs' instant complaint should be barred by the doctrine of *res judicata*.

*Plaintiffs' contentions that exceptions to res judicata apply in this case also fail*

■ While it is generally true that *res judicata* principles are applied in accord with the commitment of doing justice, and thus circumstances can dictate exceptions, it is also true that the exceptions are narrow. *See Bingaman v. Dep't of Treasury*, 127 F.3d 1431, 1437 (Fed.Cir.1997). Courts may permit exceptions to preclusion upon an occurrence of a change in the law after the initial judgment or, in some circumstances, upon the discovery of new facts that are materially relevant to the claim or issue. *See Lockheed Aircraft Corp. v. United States*, 192 Ct.Cl. 36,

---

**29.** The United States Court of Appeals for the Federal Circuit in Acumed explained the changing terminology of *res judicata* and collateral estoppel:

> In the interest of precision, courts often use the term "claim preclusion" in place of the more general term "res judicata." *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 478 (Fed.Cir.1991) (hereinafter *"Foster"*). Although the term res judicata was once used primarily to denote the concept of claim preclusion, usage of the term res judicata has evolved to include "any preclusion of litigation

> arising from a judgment, including collateral estoppel." *Foster*, 947 F.2d at 478. Thus, to maintain the analytical distinction between res judicata and collateral estoppel, courts often substitute the terms "claim preclusion" and "issue preclusion." *Id.; See generally* Restatement (Second) of Judgments, Introductory Note before ch. 3 (1982) (discussing the terminology of res judicata); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4402 (2d ed.2002) (same).

*Acumed LLC v. Stryker Corp.*, 525 F.3d at 1323 n. 2.

43, 426 F.2d 322, 326 (1970); *Saladino v. United States*, 62 Fed.Cl. 782, 792 (2004). Courts, however, "rarely" have accepted the existence of "new" evidence to combat the preclusive effect of *res judicata* and "only when a diligent plaintiff could not have discovered the facts in an earlier action." *Saladino v. United States*, 62 Fed.Cl. at 792.

▇ Plaintiffs' claim of an exception to *res judicata* is that "new" evidence consisting of plaintiffs' allegedly, timely filed, January 29, 1992, Form 1040X Amended Income Tax Return for tax years 1978–1980 had been the subject of "intentional concealment" by the IRS. Plaintiffs allege that the IRS had intentionally "misrepresented" the existence of the Form 1040X and, thus, it was not available for the District Court actions. Despite the plaintiffs' contentions, they provide, perhaps unwittingly, evidence to contradict their own assertions. As the defendant points out, the plaintiffs sent at least four letters to the IRS seeking acknowledgement that it had received the January 29, 1992 Form 1040X. The IRS sent plaintiffs a letter dated July 28, 1992, advising plaintiffs:

> that it is not routine practice for IRS to acknowledge receipt of income tax returns, original or amended. Despite the forgoing, ... we have associated with the legal file of your Tax Court case, ... in which taxable years 1978, 1979 and 1980 are at issue, your correspondences dated November 5, 1991, December 7, 1991, January 29, 1992, March 26, 1992, April 27, 1992, and July 1, 1992, together with various enclosures ..., including Forms 1040X for 1978, 1979 and 1980 all of which are dated January 29, 1992.

The fact that the IRS acknowledged in writing that it had received the plaintiffs' Forms 1040X and letters invalidates plaintiffs' allegations that the IRS "concealed" the existence of the forms, or that these forms represent "new" evidence.[30] Moreover, in actions subsequent to January 2002, the plaintiffs could have raised evidence as to any such Form 1040X and, by their current claim of concealment by the IRS, apparently chose not to do so.

*Plaintiffs fail to state a claim for relief from statutory interest previously paid on income tax fraud penalties*

Count VIII of the plaintiffs' complaint seeks restitution from the IRS "for a sum equal to the total interest the IRS charged Larson on his fraud penalties for tax years 1978, 1979, and 1980, together with statutory interest on that interest per 26 U.S.C. 6621." Essentially, it appears that plaintiffs argue that neither 26 U.S.C. § 6653 nor 26 U.S.C. § 6601(e)(2) allows for interest to accrue upon the section 6653 fraud penalties.

The plaintiffs assert that "IRS Notice 746," which states: "we charge interest on fraud and negligence penalties if the tax returns, including extensions, are due after December 31, 1988," nullifies the application of statutory interest to section 6653 fraud penalties, as "Larson's tax returns for tax years 78–80 were due on 4–15–1981."[31] Plaintiffs also attempt in their brief to demonstrate that the legislative history of sections 6653 and 6601 support their argument that interest should not have been charged on these fraud penalties:

> There is a reason Notice 746 states there is no interest on fraud penalties unless the tax return was due after 12–31–1988 and that reason is found at 26 USC 6601(e)(2)(A). It is because 26 USC 6653(b) (fraud penalty) was not added to 26 USC 6601(e)(2)(A) until 1988.

A parsing of the legislative history of 26 U.S.C. § 6653 reveals that as early as 1982 Congress had amended section 6653 to include language pertaining to interest:

- (b) Fraud.—
 - ▇ (1) In general.-If any part of any underpayment (as defined in subsection

---

30. The court notes that actions by government officials of "intentional concealment or misrepresentation" are allegations of tortious conduct, which is outside the jurisdiction of this court. *See, e.g., Keene Corp. v. United States*, 508 U.S. at 214, 113 S.Ct. 2035; *Rick's Mushroom Service, Inc. v. United States*, 521 F.3d at 1343.

31. The plaintiffs provide no documentation as to why April 15, 1981 is the alleged "due date" for the 1978, 1979 and 1980 tax years.

(c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment.

■ (2) Additional amount for portion attributable to fraud. There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601—

● (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to fraud, and

● (B) for the period beginning on the last day prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax).

■ (3) No negligence addition when there is addition for fraud. The addition to tax under this subsection shall be in lieu of any amount determined under subsection (a).

■ (4) Special rule for joint returns. In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of the spouse unless some part of the underpayment is due to the fraud of such spouse.

Pub.L. 97–248, § 325(a), Sept. 3, 1982. The effective date of this Public Law was established as follows: "The amendment made by subsection (a) . . . shall apply with respect to taxes the last day prescribed by law for payment of which (determined without regard to any extension) is after the date of enactment of this Act." *Id.*

As of a 1989 amendment, section 6653 currently reads:

Any person (as defined in section 6671(b)) who—

(1) willfully fails to pay any tax imposed by this title which is payable by stamp, coupons, tickets, books, or other devices or methods prescribed by this title or by regulations under the authority of this title, or

(2) willfully attempts in any manner to evade or defeat any such tax or the payment thereof,

shall, in addition to other penalties provided by law, be liable for a penalty of 50 percent of the total amount of the underpayment of the tax.

26 U.S.C.A. § 6653 (as amended, Pub.L. 101–239, § 7721(c)(1), Dec. 19, 1989).

■■■ The plaintiffs also rely on the language in section 6601(e). Section 6601(e)(2) was amended in 1986 to include the following:

(2) Interest on penalties, additional amounts, or additions to the tax-

■ (A) Interest shall be imposed under subsection (a) in respect of any assessable penalty, additional amount, or addition to the tax (other than an addition to tax imposed under section 6651(a)(1), 6659, 6660, or 6661) only if such assessable penalty, additional amount, or addition to the tax is not paid within 10 days from the date of notice and demand therefor, and in such case interest shall be imposed only for the period from the date of the notice and demand to the date of payment.

■ (B) Interest shall be imposed under this section with respect to any addition to tax imposed by section 6651(a)(1), 6659, 6660, or 6661 for the period which—

● (i) begins on the date on which the return of the tax with respect to which such addition to tax is imposed is required to be filed (including any extensions), and

● (ii) ends on the date of payment of such addition to tax.

Pub.L. 98–369, § 158(a), Oct. 22, 1986. The Public Law stated the effective date as follows: "The amendment made by this section shall apply to interest accrued after the date of the enactment of this Act, except with respect to additions to tax for which notice and demand is made before such date." *Id.* In 1988, 26 U.S.C. § 6601(e) was amended to include the following revision: "Paragraph (2) of section 6601(e) of the 1986 Code is amended by striking out '6659' each place it appears and inserting in lieu thereof '6653, 6659.'" Pub.L. 100–647, § 1015(b)(2)(C), Nov. 10, 1988. Thus, even though the language of section 6653 was altered to exclude

mention of interest accruing on income tax fraud penalties, Congress, by the 1988 amendment of section 6601(e), continued to allow interest on section 6653 fraud penalties, and simply shifted mention of section 6653 interest to the applicable provisions of section 6601(e).

The plaintiffs' reliance on IRS Notice 746 and the legislative history of sections 6653 and 6601(e)(2), therefore, is flawed. Although plaintiffs apparently cling to their unfounded assumption that IRS Notice 746 could abrogate a section of the United States Code,[32] plaintiffs also fail to consider that language allocating interest to fraud penalties was added to section 6653 in 1982, and this language was not revised (to eliminate mention of interest) until 1989. Further, in 1988, Congress revised the language of section 6601(e)(2)(B) to include specific mention of interest to be added to "any addition to tax imposed by section 6651(a)(1) or 6653," to be calculated beginning on the date that the tax return was due, and ceasing upon full payment of all tax liabilities. *See* 26 U.S.C. § 6601(e)(2)(B)(i)-(ii) (as amended, Pub.L. 100–647, § 1015(b)(2)(C), Nov. 10, 1988).

■■■ Plaintiffs' two arguments: "that interest was added to fraud penalties ... for taxes due on 9–3–1982," and that "Larson's tax returns for tax years 78–80 were due on 4–15–1981, so they pre-dated the fraud penalty interest," also are ineffective. Initially, when plaintiffs filed their 1978, 1979 and 1980 tax returns, these tax returns contained fraudulent information. Mr. Larson "was not shown as having a profession, job, or income-earning position or activity other than farming," yet there was evidence of "large numbers of untraceable cash transactions ..., evidence of numerous asset acquisitions ..., and [plaintiffs'] lavish lifestyle and relatively small amount of reported income on their returns." *Larson v. Comm'r*, 1994 WL 285892, at *3. In his August 19, 1985 criminal plea agreement, plaintiff Duane Larson conceded the accuracy of the criminal tax computations for the 1978, 1979 and 1980 tax years and agreed "to cooperate fully with the IRS in settling his civil taxes as assessed...." *United States v. Duane Wendall Larson*, Crim. No. 3–85–43, plea agreement at 2, ¶ 10 (D.Minn. Aug. 19, 1985). The government also preserved the right to take "civil action necessary to settle the [plaintiff's] tax liabilities for 1978, 1979 and 1980." *Id.* at 3, ¶ 13. Once the 1985 criminal tax computation was established, Mr. Larson was liable to pay the assessed amount. Finally, the August 19, 1985 criminal tax computations served as the basis to compute section 6653 fraud penalties, including interest added to the fraud penalties.

*This court does not have subject matter jurisdiction over plaintiff Duane Larson's claim against the Social Security Administration.*

■■■ Finally, regarding his 1978, 1979 and 1980 tax years, in Count IX of the complaint in case no. 08–737T, plaintiff Duane Larson argues that he is owed a refund of his self-employment, social security benefits for tax years 1978–1980 because the IRS failed to transmit the self-employment information to the Social Security Administration ["SSA"]. Plaintiff asserts that the "IRS did not transmit the self-employment information to the SSA within the statute of limitations period," and thus "the self-employment credits could not be increased in Larson's account." In the first place, the court is unaware of any duty on the part of the IRS to transmit such information. Second, in terms of jurisdiction, the United States Court of Appeals for the Federal Circuit has stated:

> Construing appellant's pleading in a light most favorable to him, that is, as a claim for social security disability benefits, we hold that the Claims Court has no jurisdiction under the Tucker Act ... over claims to social security benefits, even considering

---

**32.** As recently as August 21, 2008, the IRS sent a "Statutory Notice of Claim Disallowance" to the plaintiffs that contained the following language:
> We are sorry, but we cannot allow the entire claim for the following reasons:
> Your request for abatement of interest charged on the IRC 6653(b) Fraud Penalty cannot be

approved as a matter of law. For the years at issue, interest applies to the Fraud Penalty, as computed from the penalty assessment date, pursuant to IRC Section 6601; see 6601(e)(2), formerly 6601(e)(3) and (4).

appellant's assertions that he is entitled to relief under the Constitution. *See Weinberger v. Salfi*, 422 U.S. 749, 756–767, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (42 U.S.C. §§ 405(g) and (h) (1982) require that action for social security benefits must be brought in district court). . . .

*Marcus v. United States*, 909 F.2d 1470, 1471 (Fed.Cir.1990). Moreover, this court cannot provide the requested relief necessary to rectify a negligent action of a federal agency, as noted above.

**This court does not have subject matter jurisdiction over plaintiffs' tax year 1986 refund claim**

In a confused and internally inconsistent assertion of facts, Count VII of plaintiffs' second amended complaint in case no. 08–737T claims that they are owed a refund of $16,825.45 from the IRS, together with statutory interest. Plaintiffs allege:

Larson filed his tax return for 1986 in 1987. Larson paid the tax for his 1986 tax return in 1987. However, the IRS mistakenly, temporarily, put $16,825.45 into tax year 1986 during 1990. This money consisted of $10,825.45 from the $50,000 cashier's check that [IRS agent] Dave Gunderson collected on 8–13–90 and Larson's personal check . . . in the amount of $6,000 dated 5–21–90.

Plaintiffs further assert that the IRS Account Transcripts for 1986 were changed, without notation as to when the money was transferred, and question to what year the money was applied, if at all, or whether "[t]he $16,825.45 appears to have been lost by the IRS."

Although plaintiffs allegedly paid for the 1986 tax liabilities in 1987, in the same paragraph, they also allege that the payment emanated from a cashier's check collected by an IRS agent on a specific date, "8–13–90," not 1987, and a personal check dated "5–21–90," also well after 1987. Given the readily apparent, factual inconsistencies in plaintiffs'

allegations, plaintiffs' claim for the $16,825.45 is dismissed for failure to state a claim pursuant to RCFC 12(b)(6).

At the very beginning of the exhibits submitted with their complaint, plaintiffs proffer the following statement as relevant to the 1986 tax year claim:

[Plaintiffs] [s]eek[ ] $16,825.45 sitting in 1986. Amendment of informal refund requests dated 11–5–91, 1–29–92,[33] 5–28–92. The money was collected in 1990 to be applied to tax years 1978, 1979, & 1980. The IRS "[p]arked the money in 1986" to be moved later, but there is no record that it was ever moved permanently. The same money is also sought by 1040X's for tax years 1978–1980 because Larson did not learn the money was not moved out of 1986 until he got updated Account Transcripts printed and sent to Larson in 2006/2007. The tax return for Larsons' 1986 [tax liabilities] was filed and the taxes [for tax year 1986] were paid in 1987. There were no assessments made for 1986 thereafter. It appears the IRS "lost" the $16,825.45.

(brackets added). Regarding this claim, plaintiffs refer the court to the Form 1040X filed by Duane Larson on December 4, 2006. Plaintiffs' claim that their 1986 tax return was amended by documents submitted on "12–4–06 & 3–14–07." The "12–4–06" document, as gleaned from plaintiffs' disorganized exhibits submitted to the court, appears to be a Form 1040X originally submitted on "12–4–06" on which plaintiff Duane Larson noted "[m]inor additions/corrections added to the 3 page [attached] explanation" on "3–14–07," and without specifying what those "minor additions [and] corrections" might be.

Defendant argues that, pursuant to 26 U.S.C. § 6511(a), the plaintiffs' 2006 refund claims are "time-barred," and not germane to the 1991 claims regarding the 1986 tax year, as well as not sufficiently "detailed" or precise to identify the legal or factual basis for

---

**33.** The court notes that the very poorly assembled and disorganized collection of exhibits submitted by plaintiffs also contains two letters dated January 29, 1992. Only one of these contains refund language, although the second seeks "adjustments" on allegedly overpaid accounts. The

second January 29, 1992 letter refers to a November 10, 1991 letter from Duane Larson to the IRS in which the only reference to the 1986 tax year is an allegation that, among other misapplied payments, $6,000.00 paid on May 23, 1990 should be applied from 1986 to 1990.

the claim. Plaintiffs filed their 1986 tax return on October 5, 1987, made two payments, one on August 13, 1990 for $50,000.00 (from which Mr. Larson claims $10,825.45 should have been applied to his 1986 tax year), and a personal check for $6,000.00 on May 21, 1990.

■ The plaintiffs' attempted reassertion of these 1986 tax claims filed with the IRS in 1991 and 1992 by claims filed with the IRS in 2006, to which "minor corrections" were allegedly made in 2007, as the jurisdictional basis for filing a claim in this court on April 1, 2009, does not cure the statute of limitations defect in plaintiffs' filing established by 26 U.S.C. § 6511(a).[34] The stream of consciousness narrative Duane Larson attaches to the Form 1040X dated December 4, 2006 does not address why the 1986 tax assessment was incorrect or should be reconsidered. Nor have the plaintiffs explained why the IRS was incorrect when it applied tax payments made by the Larsons to correct their repeated history of late and incorrect filings, to years other than the ones to which the Larsons tried to have them credited.

The Larson's tax history is not one of prompt, timely, or single payment, on a yearly basis. Plaintiffs appear to have designated payments they made towards tax years for which they had yet to file tax returns, even though those years had passed when the allegedly designated payments were sent in. The IRS is authorized to credit overpayments to earlier unpaid tax years. *See* 26 U.S.C. § 6402. Perhaps this accounts for the confusion on the part of the plaintiffs. The fact that the Larsons obtained the updated transcript only in "2006/2007" does not change the relevant start date for the running of the statute of limitations. Moreover, two of the documents, dated November 5, 1991 and January 29, 1992, referred to by plaintiffs in the December 4, 2006 Form 1040X, do not appear to even reference the 1986 tax year. In the May 28, 1992 letter, the only mention of the 1986 tax year is in the reference line, which states, "Credit Balances for tax years 1986–1992," without fur-

ther explanation with respect to 1986 in the body of the letter. Similarly, the March 14, 2007 letter, which plaintiff claims was to make minor additions or corrections to the 1040X Form, only makes a request for the $16,825.45 for the tax year 1986, but without sufficient explanation, reasons or documentation, based on a "belief [that] it was over collected." Consequently, these documents do not cure plaintiffs' statute of limitations problem, or bring their claims within this court's jurisdiction on this 1986 claim. Plaintiffs clearly state in their amended complaint that: "Larson paid the tax for his 1986 tax return in 1987." This is more than three years before even the earliest "11–5–91" date on which plaintiffs claim to have amended their 1986 tax return, even though the summary included at the beginning of plaintiffs' exhibits filed with their complaint states, "[t]he money was collected in 1990 to be applied to tax years 1978, 1979, & 1980."

In opposition to plaintiffs' 1986 claim, defendant also argues that the December 4, 2006 Form 1040X was not germane to the claim filed on November 5, 1991. Plaintiffs' Form 1040X was filed in order to indicate that the return was for tax year 1986 on the plaintiffs' grounds that overpayments made with respect to that year were applied to other years and then lost by the IRS. Additionally, the 1991 letter, which plaintiffs sought to amend, pertained to "tax years 1978–80" and sought a refund for the reasons asserted in plaintiffs' 1985 petition, filed with the United States Tax Court for tax years 1978–1980. The January 28, 1992 letter to the IRS, which plaintiffs also cite as a claim, contains only one sentence: "[e]nclosed please find three Forms 1040X for the years 1978–1980." The third letter to the IRS, on which the plaintiffs based their 1986 claim, dated May 28, 1992, states: "[r]e: Credit Balances for tax years 1986–1992," and requests "a refund for the credit balances existing in the above tax years," but makes no mention of any specific sum related to any specific years, and acknowledges that at the

---

**34.** As previously noted, 26 U.S.C. § 6511(a) dictates that the taxpayer must file a refund claim "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid."

time the letter was sent, "I have not filed returns for these years."

As discussed above, "[t]he purpose of requiring the amended claim to be 'germane' to the original administrative claim is to 'prevent surprise and to give adequate notice to the [IRS] of the nature of the claim.'" *Parker Hannifin Corp. v. United States,* 71 Fed. Cl. at 235 (quoting *Western Co. of N. Am. v. United States,* 323 F.3d at 1034) (brackets in original). The germaneness doctrine applies:

> where the taxpayer (1) files a formal claim within the limitations period making a specific claim; and (2) after the limitations period but, while the IRS still has jurisdiction over the claim, files a formal amendment raising a new legal theory-not specifically raised in the original claim—that is "germane" to the original claim....

*Computervision Corp. v. United States,* 445 F.3d at 1370.

Under this standard, the plaintiffs' 2006 Form 1040X claim did not "amend" the 1986 tax year claim, or amend any claims raised in the November 5, 1991, January 29, 1992, or May 28, 1992 letters. Investigating the November 5, 1991, the January 29, 1992 (which includes tax years 1978–1980), or the May 28, 1992 letters (the later of which only mentions 1986 without the amount claimed), would not cause the IRS to focus on the allegedly missing $16,825.45 from tax year 1986.

Defendant's second contention as to why the 2006 Form 1040X does not qualify as an amended claim is that the merits of the November 5, 1991 claim were fully resolved in the United States Tax Court action. As discussed above, a final decision rejecting a claim forecloses any attempt to amend a claim. *See Computervision Corp. v. United States,* 445 F.3d at 1372; *Stelco Holding Co. v. United States,* 42 Fed.Cl. 101, 114 (1998) ("A refund claim, informal or formal cannot be amended or perfected as a matter of right after it has been denied or rejected and after the period of limitation has expired." (quoting *Newport Indus. v. United States,* 104 Ct.Cl. 38, 44, 60 F.Supp. 229, 232 (1945))), *recons. denied,* 42 Fed.Cl. 156 (1998). Consequently, as the 1994 United States Tax Court action fully resolved all of the plaintiffs' 1978–1980 claims, *see Larson v.*

*Comm'r,* 1994 WL 285892, at **4–13, the plaintiffs' attempted amendments by the November 5, 1991 and January 29, 1992 letters would fail even if the plaintiffs' 2006 Form 1040X claims were germane. The May 28, 1992 letter also fails for the reasons discussed above and below, namely, that the 1994 Tax Court action conclusively resolved the plaintiffs' 1978–1980 claims and the letter itself lacked the necessary specificity to serve as evidence of an informal refund.

■ The defendant also argues that letters the plaintiffs seek to amend with their December 12, 2006 Form 1040X and March 14, 2007 amendments thereto cannot be considered informal requests for refund. Under the "substantial variance doctrine," the United States Supreme Court has held that, "in some circumstances a taxpayer's claim is not barred by the statute of limitations even though the taxpayer did not timely file the formal detailed claim required by the regulations." *Computervision Corp. v. United States,* 445 F.3d at 1363 (citing *United States v. Kales,* 314 U.S. 186, 196–97, 62 S.Ct. 214, 86 L.Ed. 132 (1941)) (other citations omitted). In *United States v. Kales,* the Supreme Court stated:

> This Court, applying the statute and regulations, has often held that a notice fairly advising the [IRS] Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period.

*United States v. Kales,* 314 U.S. at 194, 62 S.Ct. 214 (brackets added); *see also Computervision Corp. v. United States,* 445 F.3d at 1364.

■ In this court, the "substantial variance doctrine" is composed of four separate doctrines which apply in "four limited situations," *id.* at 1364:(1) "the informal claim doctrine," *id.* at 1364–65; (2) "the waiver doctrine," *id.* at 1365–68; (3) "the general claim doctrine," *id.* at 1368–69; and (4) the "germaneness doctrine," *id.* at 1369–1371,

also discussed above. In the instant case, defendant argues that the informal claim doctrine does not provide plaintiffs a basis for jurisdiction to consider the informal letters sent to the IRS in 1991 and 1992, as amended by filing later Forms 1040X or the purported amendments thereto in 2006 and 2007, notwithstanding the applicable statute of limitations in 26 U.S.C. § 6511(a). As stated in *Computervision*, "[u]nder the informal claim doctrine, a timely claim with purely formal defects is permissible if it fairly apprises the IRS of the basis for the claim within the limitations period." *Computervision Corp. v. United States*, 445 F.3d at 1364. In fact:

> Informal refund claims have long been held valid. But they must have a written component, and should adequately apprise the Internal Revenue Service that a refund is sought and for certain years. It is not enough that the Service have in its possession information from which it might deduce that the taxpayer is entitled to, or might desire, a refund; nor is it sufficient that a claim involving the same ground has been filed for another year or by a different taxpayer.... In addition to the writing and some form of request for a refund, the only essential is that there be made available sufficient information as to the tax and the year to enable the Internal Revenue Service to commence, if it wishes, and examination into the claim.

*Am. Radiator & Standard Sanitary Corp. v. United States*, 162 Ct.Cl. 106, 113–14, 318 F.2d 915, 920 (1963) (citations omitted); *see also Kidde Indus., Inc. v. United States*, 40 Fed.Cl. 42, 61 (1997), *appeal dismissed*, 194 F.3d 1330, 1999 WL 187461 (Fed.Cir.1999) (table).

■■■■■ "The basic underlying principle [of an informal claim] is the necessity to put the [IRS] on notice of what the taxpayer is claiming and that he is in fact making a claim for refund." *Kidde Indus., Inc. v. United States*, 40 Fed.Cl. at 61 (quoting *Newton v. United States*, 143 Ct.Cl. 293, 300, 163 F.Supp. 614 (1958)) (brackets in original); *Mobil Corp. v. United States*, 67 Fed.Cl. 708, 717 (2005) ("The purpose of an informal claim is to allow the IRS 'to commence, if it wishes,

an examination into the claim.'" (quoting *Donahue v. United States*, 33 Fed.Cl. 600, 609 (1995))). In order to give the IRS actual or constructive notice of a present refund claim, the claimant must satisfy the following requirements:

(1) it should be clear from the facts and circumstances that the IRS was on actual or constructive notice that the taxpayer was asserting a right to a refund for a specific year;

(2) the claim should describe the legal and factual basis for the refund; and

(3) an informal claim must have a written component.

*See Mobil Corp. v. United States*, 67 Fed.Cl. at 716. In evaluating the sufficiency of a taxpayer's informal claim, "[t]he determination of whether a taxpayer has satisfied the requirements for an informal claim is made on a case-by-case basis and is based on the totality of the facts." *Donahue v. United States*, 33 Fed.Cl. at 608 (citing *Am. Radiator & Standard Sanitary Corp. v. United States*, 162 Ct.Cl. at 114, 318 F.2d at 920); *Pennoni v. United States*, 86 Fed.Cl. 351, 362 (2009) (quoting *Donahue v. United States*, 33 Fed.Cl. at 608).

■■■ Because neither party contests the fact that the plaintiffs' refund claims for tax year 1986 did not include a written component, the next consideration is whether plaintiffs gave actual or constructive notice of entitlement to a refund. Although the informal claim doctrine allows for constructive notice, it must be sufficient that the "IRS should have known, based on the facts and circumstances, that the [taxpayer] was making a present demand for a refund of [taxes]...." *Mobil Corp. v. United States*, 67 Fed.Cl. at 716. As noted above:

> It is not enough that the Service have in its possession information from which it might deduce that the taxpayer is entitled to, or might desire, a refund; nor is it sufficient that a claim involving the same ground has been filed for another year or by a different taxpayer.

*Am. Radiator & Standard Sanitary Corp. v. United States*, 162 Ct.Cl. at 114, 318 F.2d at 920 (citations omitted).

This court and its predecessor court have consistently highlighted the importance of the taxpayer's informal claim alerting the IRS to the basis of the taxpayer's refund claim. *See Mobil Corp. v. United States,* 67 Fed.Cl. at 717. ("In our view, it must be clear that the taxpayer is making a present demand for refund.... [I]f the IRS is left with the understanding that a taxpayer intends to file a claim in the future, this necessarily negates the inference that a claim is then being asserted.") (footnote omitted and emphasis in original); *see also Stelco Holding Co. v. United States,* 42 Fed.Cl. at 108 (" 'Neither the Commissioner nor his agents can be expected to ferret out any possible grounds for relief which a taxpayer might assert.' ") (quoting *Union Pacific R.R. Co. v. United States,* 182 Ct.Cl. at 113, 389 F.2d at 445).

▮ The United States Supreme Court has rejected as insufficient amorphous taxpayer requests for refunds. In *United States v. Andrews,* the taxpayer in question claimed a specific refund for two deductions, "or any greater sum which might be ascertained to be due." *United States v. Andrews,* 302 U.S. at 524, 58 S.Ct. 315. The Supreme Court wrote that this catchall phrase "did not call upon the Commissioner to make a complete reaudit of the taxpayer's return." *Id.* After the statue of limitations to file a claim had expired, the *Andrews* plaintiff sought to present an unrelated refund claim. *Id.* at 525, 58 S.Ct. 315. The Court refused to allow this amendment due to the fact that it was not specifically mentioned within the request for refund in the original claim. *Id.*

The plaintiffs' attempt to amend their earlier-filed claims must meet the same fate as the claim in *Andrews,* above. Neither the November 5, 1991 letter, the January 29, 1992 letter, nor the May 28, 1992 letter, seeks a refund of the $16,825.45 for tax year 1986 on the grounds that funds had allegedly been lost, or on other specific grounds which would give the IRS sufficient notice of the claim, actual or constructive. The November 5, 1991 letter and the January 29, 1992 letter do not even refer to the 1986 tax year, but only to the 1978–1980 tax years. The May 28, 1992 letter refers only generally to the years 1986–1992, with no specifics, and an admission that plaintiffs' returns for those years had not been filed. Similarly, plaintiffs' second January 29, 1992 letter, which refers to a November 10, 1991 letter, does not address the 1986 tax obligation, but rather only equates a transfer of $16,000.00 paid to the IRS in 1990 from the 1986 to the 1990 tax year. As none of the plaintiffs' letters made a present or specific demand for the $16,825.45, "[a]n investigation of the items designated [in the original refund request] could not have the least relation to that attempted to be opened in the untimely amendment." *United States v. Andrews,* 302 U.S. at 525, 58 S.Ct. 315. Moreover, the transcript in the record indicates that the $16,825.45 had already been transferred out of the 1986 tax year ($6,000.00 was removed on May 23, 1990 from plaintiffs' 1986 account and $10,825.45 was removed on August 13, 1990 from the plaintiffs' 1986 account). Thus, the plaintiff's claims in this regard were moot when requested.

*The plaintiffs' claim did not adequately describe the factual and legal bases for the refund*

As indicated above, together with the requirement that the IRS receive adequate notice from the taxpayer, that he or she is requesting a refund, the taxpayer also must make "available sufficient information as to the tax and the year to enable the [IRS] to commence, if it wishes, an examination into the claim." *Donahue v. United States,* 33 Fed.Cl. at 609 (quoting *Am. Radiator & Standard Sanitary Corp. v. United States,* 162 Ct.Cl. at 113–14, 318 F.2d at 920) (brackets added); *see also Mobil Corp. v. United States,* 67 Fed.Cl. at 718 ("In sum, the claim must provide the degree of specificity necessary for the IRS to commence, at that point, an investigation into the claim within the statutory period."). This requirement also is articulated in 26 C.F.R. § 301.6402–2(b)(1) (2009), which states:

> The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts

must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

26 C.F.R. § 301.6402–2(b)(1).

As discussed above, none of the plaintiffs' formal and informal claims satisfy the requirement that the taxpayer "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the [IRS] Commissioner of the exact basis thereof." *Id.* The plaintiffs' previously filed refund claims are inadequate to support an amendment by the 2006 Form 1040X, even under a liberal informal claim doctrine. It was not until the plaintiffs submitted the 2006 Form 1040X that the IRS could understand that the plaintiffs sought a refund for tax year 1986, as it related to a claim for the refund of $16,825.45. However, the filing of the 2006 Form 1040X clearly falls completely outside of the applicable statute of limitations. Despite the numerous communications and lettersby the plaintiffs in their submissions to the IRS, plaintiffs failed to articulate the gravamen of their complaint regarding the 1986 tax year, or offer proof or an adequate description of the basis for that 1986 refund claim.

**Plaintiffs' refund claims for tax years 1985–1989, 1991 and 1992 should be dismissed for failure to state a claim**

*Plaintiffs' amended refund claims for the years 1988, 1989 and 1991 are prohibited by the doctrine of variance*

Count VI of the plaintiffs' second amended complaint in case no. 08–737T embodies a refund claim for funds moved from, and interest charges accrued for tax years 1988, 1989 and 1991 in the amount of $22,439.24, plus interest.[35] Plaintiffs claim that the IRS improperly transferred amounts from those years to tax years 1978 and 1980, leading to deficiencies and interest penalties for tax years 1988, 1989 and 1991:

Thereafter, tax years 1988, 1989, and 1991 showed delinquent taxes due and were charged interest and penalties until 10–21–97 when Larsons paid off the entire debt for tax years 1988, 1989, and 1991 as if he had paid nothing at all to tax years 1988, 1989, and 1991 prior to 10–21–1997.

Defendant argues that these claims are not consistent with previously filed claims for those years, including the original claims submitted over the course of 1992–1994. Based on this comparison, the defendant argues that the plaintiffs' refund claims, included in their complaint for tax years 1988, 1989 and 1991, are "therefore barred by the doctrine of variance."

 While the United States, in some specific circumstances, will waive its sovereign immunity and consent to be sued over a taxpayer refund claim, such waiver is governed by specific statutes. In particular, "[a] taxpayer may not sue the United States for the recovery of income taxes unless it has timely filed a refund claim at the Internal Revenue Service in the manner prescribed by regulation." *Lockheed Martin Corp. v. United States,* 210 F.3d 1366, 1371 (Fed.Cir. 2000). The regulations at 26 C.F.R. § 301.6402–2(a) require that the taxpayer seeking a refund provide materials to substantiate their claim. *Id.* Accordingly, the Treasury Regulations further provide that:

No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of the period. The claim must set forth in detail each ground upon which a credit or a refund is claimed and in facts sufficient to apprise the [IRS] Commissioner of the exact basis thereof. 26 C.F.R. § 301.6402–2(b)(1). Read together, these two provisions offer the framework for evaluating whether the basis for a taxpayer's refund claims presented in court radically vary from those presented in an IRS administrative claim. "Courts have long interpreted § 7422(a) and Treasury

---

**35.** As to plaintiffs' allegation in their complaint of having paid $10,825.45 from a $50,000.00 cashier's check to an IRS official on August 13, 1990, and a personal check in the amount of $6,000.00 on May 5, 1990, the numbers do not add up to the $22,439.24 claimed.

Reg. § 301.6402–2(b)(1) as stating a 'substantial variance' rule which bars a taxpayer from presenting claims in a tax refund suit that 'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS." *Lockheed Martin Corp. v. United States*, 210 F.3d at 1371 (citing *Cook v. United States*, 220 Ct.Cl. 76, 599 F.2d 400, 406 (1979)); *see also Western Co. of N. Am. v. United States*, 323 F.3d at 1034 ("Under [the substantial variance] doctrine, a taxpayer may not substantially vary either the factual or the legal basis of any claim for refund in court from those presented in its administrative claim before the IRS."); *Burlington N., Inc. v. United States*, 231 Ct.Cl. at 225, 684 F.2d at 868 (noting that, "[i]t is well established that a refund action cannot be brought in this court unless a claimant has first met certain statutory prerequisites." (citing 26 U.S.C. § 7422(a))); *Marandola v. United States*, 76 Fed.Cl. 237, 243 (2007), *appeal dismissed*, 518 F.3d 913 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2008).

▆▆▆ In *Computervision Corp. v. United States*, 445 F.3d 1355, the United States Court of Appeals for the Federal Circuit elaborated on the variance doctrine as follows:

In this circuit this aggregation of rules [§ 7422(a) and Treas. Reg. § 301.6402–2(b)(1) ] has come to be known as the substantial variance doctrine. The doctrine permits consideration of a claim for refund despite failure to timely file detailed formal claims with the IRS when a substantial variance from the requirements of the regulation is not involved.

*Computervision Corp. v. United States*, 445 F.3d at 1363–64 (footnote and citations omitted). As noted above, the Federal Circuit listed only four specific circumstances in which variance would be allowed. The four circumstances themselves have been identified as separate doctrines by the Federal Circuit: (A) the "informal claim doctrine," under which a timely claim with only formal defects is permitted if the IRS has been apprised of the basis for the claim within the limitations period, *id.* at 1364; (B) the "waiv-

er doctrine," under which, if a "taxpayer files a formal claim, but fails to include the specific claim for relief, the claim may nonetheless be considered timely if the IRS considers that specific claim within the limitations period," *id.* at 1365; (C) the "general claim doctrine," under which, if a formal claim has been timely filed, and an amendment is filed outside the limitations period that makes the general claim more specific or definite on matters already within the IRS' knowledge, or which in the course of an investigation the IRS would have naturally ascertained as the basis for the claim, and the IRS has not been misled, then the amendment is permissible, *id.* at 1368; and (D) the "germaneness doctrine," under which: "the taxpayer (1) files a formal claim within the limitations period making a specific claim; and (2) after the limitations period but, while the IRS still has jurisdiction over the claim, files a formal amendment raising a new legal theory-not specifically raised in the original claim-that is 'germane' to the original claim, that is, it depends upon facts that the IRS examined or should have examined within the statutory period while determining the merits of the original claim," *id.* at 1370. As a matter of policy, the doctrines are applied to a tax refund suit, because they ensure that the taxpayer claim:

(1) gives the IRS notice as to the nature of the claim and the specific facts upon which it is predicated; (2) gives the IRS an opportunity to correct errors; and (3) limits any subsequent litigation to those grounds that the IRS had an opportunity to consider and is willing to defend.

*Lockheed Martin Corp. v. United States*, 210 F.3d at 1371 (citing *Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1138 (Fed.Cir. 1983)); *see also Union Pac. R.R. Co. v. United States*, 182 Ct.Cl. at 109, 389 F.2d at 442.

▆▆▆ The defendant points to letters in the exhibits filed with the court in which the plaintiffs have urged substantially different legal theories and factual bases in their IRS administrative requests, including informal refund letters and Forms 1040X for refund, as compared to those raised in the instant, disorganized complaint, including the descriptions by plaintiffs of alleged conversa-

tions with IRS officials submitted by them to rebut evidence in the record, and letters dated (1) May 28, 1992; (2) June 6, 1993; (3) April 24, 1994; (4) September 12, 1994; and (5) March 22, 1999. These letters run the gamut and, apparently, based on their vague nature, plaintiffs hope to preserve all and any refund rights. Some include tax years, some include tax years and alleged amounts, and only one even mentions a justification for refunds, and then only by reference to an earlier letter sent to the IRS without explanation as to what basis the refund was requested. The plaintiffs requested refunds of non-specific "credit balances" resulting from payments made during 1990–1991, but also indicated that no returns had yet been filed by taxpayers for the years 1986–1992. Further, the plaintiffs' March 22, 1999 letter requested refunds of $2,747.81, allegedly due to this amount having been transferred from tax year 1997 to 1991, and $594.24 that allegedly "disappeared" from the plaintiffs' account. Finally, with their Forms 1040X, the plaintiffs filed an apparently loosely related factual statement and a lengthy, legal-type brief entitled "EXPLANATION OF AMENDMENTS TO TIMELY FILED INFORMAL CLAIMS FOR CREDIT FOR TAX YEARS 1988 AND 1989 WHICH EFFECTS [sic] SCHEDULE D OF FORM 1040[X] FOR TAX YEAR 2005." (emphasis in original). In the attempted explanation, plaintiffs claimed that they are:

> now amending [their] timely filed informal claims for capital loss credit for tax years 1988 ... and 1989 ... so as to include capital loss for these two properties in tax years 1988 and 1989.

**36.** Section 6213(a) reads, in part:

> Except as otherwise provided in section 6851, 6852 or 6861, no assessment of a deficiency in respect of any tax ... and no levy or proceeding in court for its collection shall be made, begun, or prosecuted ... if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final.
> 26 U.S.C. § 6213(a).

**37.** Section 6512(a)(5) states:

> If the Secretary has mailed to the taxpayer a notice of deficiency under section 6212(a) ... and if the taxpayer files a petition with the Tax Court within the time prescribed in section

. . . .

Larson asks that the IRS please calculate the changes to tax year 2005 [from the capital loss amendments] for Larson.

Despite the plaintiffs' assertions, the February 15, 2007 Form 1040X did not include a refund claim consisting of either interest upon their accounts in February 1996 or on their 1988, 1989 and 1991 accounts due to allegedly improper IRS transfers of monies to other tax years. Quite simply, as the plaintiffs failed to administratively advance a claim pertaining to a refund of accrued interest from their 1988, 1989 and 1991 accounts, they may not, at this late date, advance such a claim in their complaint before this court.

*Plaintiffs' claim that the IRS cannot transfer credit balances to other tax years is not viable*

In Count V of the plaintiffs' complaint in case no. 08–737T, plaintiffs seek a refund of monies allegedly paid toward tax liabilities stemming from the 1985–1989, 1991 and 1992 tax years. Specifically, plaintiffs argue that "[t]he levy and collection made by the IRS of checks designated [by plaintiffs] for tax years 1985–1989, and 1991 and 1992 were collections made by levy (26 U.S.C. 7701(a)(21)), and were made before the Tax Court order was final. To collect against anything, by any means, to be paid against a case that is before the Tax Court before the Tax Court order is final is a violation of 26 USC 6213(a) [36] and 26 USC 6512(a)(5)." [37] According to the complaint, "Larson demands judgment for the refund of the money collected by the IRS seizing Larson's payments that

> 6213(a) (or 7481(c) with respect to a determination of statutory interest or section 7481(d) solely with respect to a determination of estate tax by the Tax Court), no credit or refund of income tax for the same taxable year, ... in respect of which the Secretary has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court except—
> As to any amount collected within the period during which the Secretary is prohibited from making the assessment or from collecting by levy or through a proceeding in court under the provisions of section 6213(a).
> 26 U.S.C. § 6512(a)(5).

Larson had paid to be applied to other years, as overpayments, or by any other means, including, but not limited to, IRS internal record keeping adjustments."

■ The Internal Revenue Code at section 6331(b) defines the term "levy" to include "the power of distraint and seizure by any means." 26 U.S.C. § 6331(b) (2006); *see also Black's Law Dictionary* 816 (7th ed. 1999) ("*FLevy*—The legally sanctioned seizure and sale of property; the money obtained from such a sale."); *Interfirst Bank Dallas, N.A. v. United States*, 769 F.2d 299, 305 (5th Cir.1985) ("It [section 6331] clearly contemplates that a levy is a forcible means of extracting taxes from a recalcitrant taxpayer.") (footnote omitted), *cert. denied*, 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986). This definition stands in stark contrast to plaintiffs' misuse of the term "levy" in this context and accusations of a forceful and illegal IRS "levy." As the record reflects, and plaintiffs themselves state, the multiple payments (18 personal checks and one cashier's check) designated by them to be applied to tax years 1985–1989, 1991 and 1992, were made by the taxpayers, free of duress, in 1989, 1991 and 1992. The payments were voluntary payments and, therefore, could not fall under any prohibitions for unilateral collection by the government, whether there was ongoing litigation or not. Nonetheless, although misusing the term "levy," the plaintiffs' complaint appears to argue that the failure of the IRS to apply the 19 checks submitted by plaintiffs in the exact categorization and to the exact tax years to which plaintiffs tried to designate the payments constituted an involuntary and improper application of those funds to different tax years than those chosen by plaintiffs. There are several difficulties with the plaintiffs' argument.

■ The IRS possesses the discretionary authority to apply tax overpayments[38] to

previous outstanding tax liabilities pursuant to section 6402(a):

> In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c) and (d), refund any balance to such person.

26 U.S.C. § 6402(a) (1988); *see also* 26 C.F.R. § 301.6402–1 ("The Commissioner, within the applicable period of limitations, may credit any overpayment of tax, including interest thereon, against any outstanding liability for any tax (or for any interest, additional amount, addition to the tax, or assessable penalty) owed by the person making the overpayment and the balance, if any, shall be refunded, subject to sections 6402(c) and (d) and the regulations thereunder, to that person by the Commissioner.").

■ Although 26 U.S.C. § 6402(a) and 26 C.F.R. § 301.6402–1 allow the IRS discretion to apply an overpayment by a taxpayer to outstanding tax liabilities of that taxpayer, the IRS first must try to honor the taxpayer's designation if the payment was voluntary on the part of that taxpayer.

> When a taxpayer makes voluntary payments to the IRS, he has a right to direct the application of payments to whatever type of liability he chooses. If the taxpayer makes a voluntary payment without directing the application of the funds, the IRS may make whatever allocation it chooses. When a payment is involuntary, IRS policy is to allocate the payments as it sees fit.

*Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir.1983) (citation omitted); *see also Sotir v. United States*, 978 F.2d 29, 30 (1st Cir.1992) ("When a taxpayer makes a

---

**38.** In the context of tax law, the United States Supreme Court has noted:

> we read the word "overpayment" in its usual sense, as meaning any payment in excess of that which is properly due. Such an excess payment may be traced to an error in mathematics or in judgment or in interpretation of facts or law. And the error may be committed

by the taxpayer or by the revenue agents. Whatever the reason, the payment of more than is rightfully due is what characterizes an overpayment.

*Jones v. Liberty Glass Co.*, 332 U.S. 524, 531, 68 S.Ct. 229, 92 L.Ed. 142 (1947), *reh'g denied*, 333 U.S. 850, 68 S.Ct. 657, 92 L.Ed. 1132 (1948).

voluntary payment without indicating the liability to which the payment is to be applied, ordinarily the IRS may apply the payment to whichever liability of the taxpayer it chooses."), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1388, 122 L.Ed.2d 762 (1993); *Davis v. United States,* 961 F.2d 867, 878 (9th Cir.1992) ("When a taxpayer submits a voluntary payment she may designate to which liability the money should be applied. If the taxpayer fails to target the funds to a specific liability, the IRS may apply the payment as it sees fit.") (citations omitted), *cert. denied,* 506 U.S. 1050, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993); *Wood v. United States,* 808 F.2d 411, 416 (5th Cir.1987) ("It is well established that in the absence of a direction by the taxpayer the IRS can apply a payment to any outstanding tax liability of the taxpayer.... But if the taxpayer directs that a payment be applied in a certain manner, the IRS must abide by the taxpayer's direction.") (citations omitted); *Bryant v. Comm'r,* 97 T.C.M. (CCH) 1384, 2009 WL 981715, at *4 (U.S.Tax Ct.2009) ("When a taxpayer owing more than one tax or owing tax for more than 1 year makes voluntary payments to the IRS, he or she may, by specific written directions, assign the application of those payments to any portion of the liability. *Wood v. United States,* 808 F.2d 411, 416 (5th Cir.1987); *O'Dell v. United States,* 326 F.2d 451, 456 (10th Cir.1964). Under the voluntary payment rule, when a taxpayer who has outstanding tax liabilities voluntarily makes a payment, the IRS usually will honor the taxpayer's request as to how to apply that payment. *United States v. Ryan,* 64 F.3d 1516, 1522 (11th Cir.1995)."); Rev. Proc.2002–26, 2002–1 C.B. 746 ("If additional taxes, penalty, and interest for one or more taxable periods have been assessed against a taxpayer (or have been mutually agreed to as to the amount and liability but are unassessed) at the time the taxpayer voluntarily tenders a partial payment that is accepted by the Service and the taxpayer provides specific written directions as to the application of the payment, the Service will apply the payment in accordance with those directions.").

The distinction between voluntary and involuntary payments has been succinctly defined by the United States Tax Court:

> An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.

*Amos v. Comm'r,* 47 T.C. 65, 69, 1966 WL 1102 (1966); *see also Muntwyler v. United States,* 703 F.2d at 1032 (noting that the Tax Court's involuntary payment definition in *Amos v. Comm'r* is "frequently cited."). The *Muntwyler* Court of Appeals further clarified the voluntary and involuntary payment distinction by adding:

> The distinction between a voluntary and involuntary payment in *Amos* and all the other cases is not made on the basis of the presence of administrative action alone, but rather the presence of court action or administrative action resulting in an actual *seizure* of property or money as in a levy. No authorities support the proposition that a payment is involuntary whenever an agency takes even the slightest action to collect taxes, such as filing a claim or, as appears to be a logical extension of the Government's position, telephoning or writing the taxpayer to inform him of taxes due.

*Id.* at 1033 (emphasis in original).

However, the application of a voluntary taxpayer overpayment with specific instructions to the IRS as to how it is to be applied must be made toward a current (i.e., "outstanding") liability. *See N. States Power Co. v. United States,* 73 F.3d 764, 767 (8th Cir.) ("We agree with the United States that the word 'liability' in Section 6402[a] means *'outstanding* liability,' one that is unpaid when the credit is made.") (emphasis in original), *cert. denied,* 519 U.S. 862, 117 S.Ct. 168, 136 L.Ed.2d 110 (1996). The *Larson* plaintiffs allege to have designated payments totaling $189,758.00 to be applied to tax years 1985 through 1989.[39] Despite these

---

**39.** According to plaintiffs' complaint, alleged payments by the taxpayers and IRS credits to the taxpayers' account were made as follows:

designations, the plaintiffs' claim that the IRS improperly failed to apply the voluntary payments in accordance with the plaintiffs' designation fails. In fact, at the time of the payments, plaintiffs had yet to file returns for the tax years they designated for application of their payments. Plaintiffs' tax returns for the years 1988, 1989 and 1991 were not filed until September 10, 1994.[40] Without a valid (or completed) tax return on file with the IRS, tax liability cannot be calculated. *See, e.g., United States v. Verkuilen,* 690 F.2d 648, 654 (7th Cir.1982) ("A tax form which does not disclose sufficient information from which tax liability can be calculated is not a tax return under the Internal Revenue Code.") (citations omitted); *accord, Edwards v. Comm'r,* 680 F.2d 1268, 1269–70 (9th Cir. 1982); *Montgomery v. Comm'r,* 122 T.C. 1, 7–8, 2004 WL 99207 (2004) ("[I]t is reasonable to interpret the term 'underlying tax liability' as a reference to the amounts that the Commissioner assessed for a particular tax period. In this regard, the term 'underlying tax liability' may encompass an amount assessed following the issuance of a notice of deficiency under section 6213(a), an amount 'self-assessed' under section 6201(a),[41] or a combination of such amounts."). Nor, at the time plaintiffs submitted the voluntary payments listed above, had the IRS assessed a Notice of Deficiency for tax years 1985–1992. At the time plaintiffs made the payments, the outstanding tax year liabilities for which returns had been filed were tax years 1978 and 1979, precluding the ability of the IRS to apply the plaintiffs' voluntary $189,758.00 in payments to anything other than established tax liability for those years. As a result, the IRS applied the payments to 1978 and 1979. Plaintiffs' allegations that their attempted designations were improperly ignored must fail.

## Plaintiffs' second complaint

On July 21, 2009, these same plaintiffs, Duane and Pamela Larson, filed yet another complaint, case no. 09–470T, claiming a tax refund in this court, this time for $17,349.69. In contrast to the $189,758.00 discussed above, the IRS did, in this instance, levy plaintiffs' property, the sale proceeds of which were applied to plaintiffs' tax year liabilities for 1978. Additionally, both monetary amounts ($189,759.00 and $17,349.69) were applied by the IRS to a tax year that was under United States Tax Court jurisdiction. However, in light of this levy and application to outstanding tax liabilities, both the amounts at issue in the earlier complaint, case no. 08–737T, and this new complaint were valid IRS actions under the Internal Revenue Code, executed in order to satisfy plaintiffs' tax liabilities.

Although plaintiffs admit that this most recent complaint "was originally meant to be included within, and is described at various places within, Plaintiffs' Second Amended Complaint," in case no. 08–737T, plaintiffs,

---

● In 1989 and 1990, plaintiffs paid a total of $120,075.00 to the IRS. This amount was paid over the balance of 18 checks, and the plaintiffs claim that each check was "designated to be applied to tax years 1985–1989." The IRS paid $29,900.00 to the Department of Justice to cover Duane Larson's criminal fine stemming from his federal conviction. Thus, according to the plaintiffs, payment of the criminal fine left $90,175.00 to be applied to tax years 1985 to 1989. Further, Duane Larson claims to have paid an additional $12,637.00 toward his 1992 estimated taxes, bringing the total of the two payments to $52,610.00.

● On April 16, 1991, plaintiff Duane Larson paid $46,973.00 to the IRS by cashier's check to be applied to tax year 1991.

● On April 10, 1992, Duane Larson paid the IRS $39,973.00 in estimated taxes for tax year 1992.

**40.** In their complaint, plaintiffs state: "[t]he Tax Returns for tax years 1988, 1989, and 1991 were all three filed on *9–10–1994.*" (emphasis in original).

**41.** Section 6201 of the Internal Revenue Code reads in part:

(a) The Secretary is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title, or accruing under any former internal revenue law, which have not been duly paid by stamp at the time and in the manner provided by law. Such authority shall include the following:

(1) The Secretary shall assess all taxes determined by the taxpayer or by the Secretary as to which returns or lists are made under this title. . . .

26 U.S.C. § 6201(a)(1) (2006).

instead, filed a new, very brief complaint.[42] The plaintiffs did file a Notice of Directly Related Case pursuant to RCFC 40.2, and are urging the consolidation of the claim in case no. 09–470T with the earlier case no. 08–737T to promote judicial efficiency. According to the plaintiffs, the cases are related because both complaints involve "the same parties and [are] based upon the same or similar claims." Moreover, the pertinent facts of this most recent complaint are interspersed throughout the filings in the earlier case no. 08–737T, including evidence included in the material attached to the plaintiffs' first complaint regarding the $17,349.69 which was claimed to have been applied to the plaintiffs' 1978 account. In a separate order, the court has consolidated the two cases.

The new complaint again raises an allegedly illegal IRS levy and subsequent sale of 256 gold coins, put up as collateral for bond in Duane Larson's criminal case, the proceeds from which were applied to the plaintiffs' outstanding tax liabilities for tax year 1978. Plaintiff Duane Larson pled guilty to criminal tax evasion for the year 1979, but also conceded the accuracy of the criminal tax computations for the years 1978, 1979 and 1980. The plaintiffs assert that:

On 3–10–1986 the IRS presented a Notice of Levy [43] to Goldberg Bonding Co. As a result of that levy 256 gold coins that belonged to Larson were taken from Norwest Midland Bank on 3–18–1986. The IRS sold those coins, and on 6–2–86 the IRS applied $17,349.69 [44] to tax year 1978.

The plaintiffs contend that they filed three timely, informal refund claims with the IRS on November 5, 1991,[45] July 7, 1987, and May 27, 1988. Shortly before filing the original complaint (case no. 08–737T on October 5, 2008) in this court, plaintiffs attempted to amend their previous informal claims for the $17,349.69 with a Form 1040X refund request for tax year 1978. Plaintiffs, relying on the same grounds as in their original filing, claim that "Larson's informal refund requests were filed within 2 years of the payment made on 6–2–86 per 26 USC 6511[a]...." Also, in addition to claiming the validity of their Form 1040X amendments to their refund requests, plaintiffs again argue that this IRS "levy and collection of $17,349.69 applied to tax year 1978 was a violation of 26 USC 6213(a) because it was done during the time Larson's Tax Court petition was pending and before the U.S. Tax Court order was final" on June 29, 1994. Plaintiffs seek a refund of the $17,349.69 "together with statutory inter-

---

**42.** Specifically, the plaintiffs cite a administrative error and mistake as the reason for the delay in filing this claim:

Larson filed his amended refund request for tax year 1978 seeking the $17,349.69 on 10–15–2008 because he had mistakenly forgotten to file the 1978 amended refund request, earlier. Rather, by mistake Larson had filed an amended refund request for tax year 1976 instead. Consequently, he had to file a correct refund request amendment for tax year 1978, which he did on 10–15–08.

Plaintiffs also note that under 26 U.S.C. § 6532(a)(1) (2006), an administrative refund request must be denied, pursuant to 26 U.S.C. § 7422(a), before relief can be pursued in court. However, section 7422(a) also considers the claim "denied," if the IRS does not respond to the claim after six months. Thus, plaintiffs argue that, as of the original case's filing (October 16, 2008), this most recent claim was not administratively "ripe" for adjudication. However as stated in *Computervision Corporation:*

The same rule necessarily applies where the taxpayer elects to terminate the IRS's jurisdiction by filing a suit for refund. While the taxpayer has the right to file a refund suit if the

IRS has not acted on the claim for six months, the IRS's jurisdiction over the claim necessarily terminates on the date a refund suit is filed. *See* Exec. Order No. 6166, § 5 (June 10, 1933), *reprinted* in 5 U.S.C. § 901 (2000). The IRS no longer has the authority to resolve the claim, and therefore is without power to "allow" or "disallow" it.

*Computervision Corp. v. United States,* 445 F.3d at 1372.

**43.** The copy of the Notice of Levy in the record provided to the court is in part, illegible.

**44.** The IRS actually received $22,560.86 from the sale of plaintiffs' 256 gold coins. However, the IRS applied $5,211.17 of this total to tax year 1976, and the remaining balance (of $17,349.69) was applied to tax year 1978. In the case before this court, plaintiffs do not make any claim for a refund of 1976 tax liabilities, nor was the 1976 tax year involved in the United States Tax Court litigation.

**45.** The November 5, 1991 informal refund request was for $22,560.86, and was applied to 1976 and 1978 on June 2, 1986.

est thereon from 6–2–86 until the date of its return, per 26 USC 6621."

Initially, plaintiffs filed informal refund requests on July 7, 1987 and May 27, 1988 for the entire $22,560.86 from the sale of the gold coins pursuant to 26 U.S.C. § 7422(a). The Larsons argue that these claims were made within "2 years from the time the tax was paid," on June 2, 1986, pursuant to 26 U.S.C. § 6511(a), and the amended return also related back to the informal refund inquiries made by Mr. Larson in 1987 and 1988, as those refund claims for the gold coin sale proceeds had not been approved or denied by the IRS. The Form 1040X amendment, submitted as a refund of $17,349.69, does not mention the coins in the body of the form. Plaintiff Duane Larson, however, appears to have attached a narrative to the Form 1040X filed on October 5, 2008, which mentions a claim for gold coins. The plaintiffs attach only one copy of an informal claim letter to their new complaint in case no. 09–470T, which only mentions a claim for "$22,560.86." [46] The bulk of the attachments to the new complaint are copies of IRS responses to such letters, some of which are difficult to read. Reviewing the material in the case no. 09–470T record, there is no mention of, or allusion to, a section 6213(a) illegal levy and collection claim, only a reference to the fact that the United States Tax Court still had jurisdiction over tax year 1978 and a comment as to how the excess from the sale of the gold coins was applied to the 1976 and 1978 tax years.

Regardless, levies and collections applied to jeopardy assessments fall within an excep-

tion to 26 U.S.C. § 6213(a). Section 6213(a) applies a prohibition to court actions, levies, and collections for tax years when such tax years are under the jurisdiction of the United States Tax Court. In general, the statute states:

> Except as otherwise provided in section 6851, 6852 or 6861, no assessment of a deficiency in respect of any tax ... and no levy or proceeding in court for its collection shall be made, begun, or prosecuted ... if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final.

26 U.S.C. § 6213(a).

 In this case, the exception for jeopardy assessments made pursuant to 26 U.S.C. § 6861 [47] applies. On August 15, 1985, the IRS made jeopardy assessments of plaintiffs' 1978, 1979 and 1980 taxes, penalties, and interest. Notice and demand for the jeopardy assessments for years 1978, 1979 and 1980 were provided to Mr. Larson by the IRS Notice of Deficiency issued on September 16, 1985. *See Fl. Country Clubs, Inc. v. Comm'r*, 122 T.C. 73, 86, 2004 WL 193574 (2004) ("A 'notice of deficiency' is defined in section 6212(a) as a notice from the Secretary sent to the taxpayer by certified or registered mail in which the Secretary has determined that there is a deficiency in respect of any tax imposed by subtitle A or B or chapter 41, 42, 43, or 44."), *aff'd,* 404 F.3d 1291 (11th Cir.2005). Plaintiffs did not pay the proposed deficiency, but instead filed a claim for relief in the United States Tax Court. [48]

---

**46.** The same letter mentioning a refund request of "$22,560.86" for tax year 1986 was filed with case no. 08–737T as an exhibit.

**47.** Jeopardy assessments are authorized under section 6861:

> If the Secretary believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary for the payment thereof.

26 U.S.C. § 6861. Section 6213(a)'s exception for jeopardy assessments pursuant to section 6861 is simply stated as, "[e]xcept as otherwise

provided in section 6851, 6852 or 6861....." 26 U.S.C. § 6213(a).

**48.** The 1994 United States Tax Court opinion does not make any reference to the validity (or invalidity) of the August 1985 jeopardy assessments, but rather only to the validity of the 26 U.S.C. § 6653(b) fraud penalties that were applied to plaintiffs' 1978–1980 accounts on September 16, 1985. However, plaintiffs challenged the collection of jeopardy assessments in the 2004 United States District Court for the Central District of California, case no. 04–1176, and the District Court soundly rejected them:

> Although plaintiffs have pleaded their action as one involving the Service's alleged "excessive" and wrongful collection of their Federal in-

In order to collect upon these jeopardy assessments, the IRS is authorized, under section 6331(a), to collect such taxes by means of levy:

> If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax ... by levy upon all property and rights to property ... belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.

> . . . .

> If the Secretary makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10–day period provided in this section.

26 U.S.C. § 6331(a) (2006). As noted previously, the IRS applied jeopardy assessments to plaintiffs' tax year 1978, 1979 and 1980 liabilities on August 15, 1985. Shortly thereafter, the IRS lawfully served notice of levy upon the bail bondsman in order to take possession of plaintiffs' gold coins, and applied the $17,349.69 from the sale of the coins to the plaintiffs' outstanding 1976 and 1978 tax liabilities.

## CONCLUSION

The plaintiffs have filed numerous lawsuits in connection with tax disputes stemming from their tax year liabilities in 1978, 1979, 1980, 1986, 1988, 1989 and 1991, including two lawsuits currently in this court. Plaintiffs have had many opportunities for a full and fair litigation of all their arguments. The plaintiffs' claims have received final judgment from competent courts, and those claims are foreclosed to further litigation in federal courts, notwithstanding the plaintiffs' attempts to repackage those same claims in the instant complaints. Therefore, this court dismisses the plaintiffs' complaints in case

come tax liabilities for the subject years under 26 U.S.C. §§ 6861 and 7433, this action really is nothing more than a refund action for the subject years under 26 U.S.C. § 7422, which involves a repetition of Larson's unsuccessful

nos. 08–737T and 09–470T, both with prejudice, for lack of subject matter jurisdiction, pursuant to RCFC 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6). Costs to the defendant.

**IT IS SO ORDERED.**

United States Court of Federal Claims.

1998 District Court Action, albeit utilizing somewhat different theories for recovery. Thus, the action is barred by *res judicata.* *Duane and Pamela Larson v. Comm'r,* No. 04–1176, slip op. at 9 (C.D.Cal.2005).